BOOCHEVER, Circuit Judge.
 

 This case involves the validity of a compromise arrangement negotiated between a debtor and its major creditor prior to an adjudication of bankruptcy. Sam Jonas, trustee in bankruptcy for Southland Supply, Inc. (Southland), appeals summary judgment entered by the bankruptcy court in favor of the United States Small Business Administration (SBA). Jonas contends that it was improper for the court to enforce the SBA’s security interest against Southland’s lawsuit settlement proceeds. The district court affirmed the bankruptcy court judgment, and we also affirm. FACTS
 

 Southland, the bankrupt in this proceeding, received a $300,000 loan from Santiago Bank on July 30, 1975. The SBA guaranteed 90% of the loan. Southland delivered a promissory note and granted Santiago a security interest in Southland’s inventory, accounts receivable, machinery, equipment, furniture and fixtures. In addition, South-land’s president Gerald Craig, and his wife, personally guaranteed the loan and secured this guarantee with a third deed of trust on their ranch property in San Diego, California.
 

 
 *1078
 
 On November 14, 1975, Southland filed a petition for an arrangement under Chapter XI of the Bankruptcy Act.
 
 [1]
 
 Santiago was listed as an estate creditor. Southland listed a pending lawsuit as an asset of the estate. The lawsuit,
 
 Southland Supply Inc. v. Dunn Properties Corp., et al.,
 
 which was filed in a California State Superior Court, arose out of a January, 1974 fire that destroyed a warehouse containing business inventory belonging to Southland. Southland filed suit against various parties connected with the warehouse fire on April 4, 1975, praying for damages in excess of $600,000. This lawsuit was settled and approved on February 14,1978, well after Southland was adjudicated as a bankrupt on July 15, 1976.
 

 In January, 1976, a creditor’s committee was formed and approved by the bankruptcy court. Sam Jonas was appointed as standby trustee, and the law firm of Neben and Starrett was authorized to act as attorneys for the creditor’s committee. Representatives from Southland, Santiago, and the SBA met in July, 1976, to discuss a compromise arrangement on the loan. The parties entered into a stipulation which was approved by the bankruptcy court on July 8,1976. The stipulation involved two major components: Southland agreed to assign the net proceeds of any judgment in its pending lawsuit to Santiago as additional collateral, and in return Santiago released its lien on the sale proceeds from the Craigs’ San Diego ranch. This transaction netted the Craigs approximately $60,000, from which they agreed to make two delinquent loan payments of $5,600 apiece and to reduce the principal on the Santiago loan by about $25,000. The remainder, approximately $25,000, was to be used as working capital for Southland. None of the other creditors participated in this arrangement, but the stipulation presented to the bankruptcy court, which contained the details of the plan, was signed and approved by Ne-ben and Starrett, the authorized attorneys for the creditor’s committee.
 

 Pursuant to the above agreement, Santiago filed a Uniform Commercial Code financing statement covering the potential lawsuit proceeds, and also filed, under California Code of Civil Procedure 688.1, a first lien on the suit’s proceeds in Orange County Superior Court where the suit was pending. After Southland was adjudicated a bankrupt on August 27, 1976, the SBA honored its guarantee and paid Santiago. Santiago in turn assigned the SBA all of its rights in the Southland note, including its right to all collateral. The SBA then auctioned South-land’s physical assets, netting $40,669.80, and recovered $3,688.62 on Southland’s accounts receivable. This left an outstanding principal balance of $218,136.72 owed by Southland to the SBA, plus accrued interest. The only remaining collateral available to the SBA was the lawsuit assignment.
 

 On February 14, 1978, Southland settled its pending lawsuit, which after various deductions, left approximately $200,000. The bankruptcy court approved the compromise settlement. Jonas, as trustee, controls the $200,000, but is unable to distribute the funds to other creditors because of the SBA’s lien. On October 2, 1978, Jonas filed a claim in bankruptcy court to determine the validity of the SBA’s interest. The SBA
 
 [2]
 
 filed a counterclaim seeking enforce
 
 *1079
 
 ment of its security interest. On May 7, 1979, the SBA filed a motion to pay over funds. The motion requested that the court recognize the validity of the SBA claim on the lawsuit settlement proceeds, and recognize that all other collateral had been exhausted. The trustee’s attorney, Tiernan, filed a declaration in opposition to the SBA motion on the day of the scheduled hearing, May 18, 1979.
 

 At the hearing, the bankruptcy court orally deemed the SBA motion to be a motion for summary judgment, and heard argument on the issues. Neither party objected to this procedure, and both attorneys were prepared to argue the motion. Both parties filed supplemental papers, and on June 5,1979, the Bankruptcy Court granted summary judgment for the SBA. This order was affirmed by the United States District Court on November 6,1979. The trustee appeals to this court.
 

 DISCUSSION
 

 I. TREATMENT OF THE SBA’S MOTION AS ONE FOR SUMMARY JUDGMENT
 

 At the hearing on the SBA’s motion to pay over, the Bankruptcy judge deemed the motion in effect, a motion for summary judgment. The trustee now argues that this was improper, and that the court did not comply with the procedural requirements of Federal Rule of Civil Procedure 56.
 
 [3]
 
 Specifically, the trustee contends that only 9 days notice was provided, instead qf the 10 days required by Rule 56, and that he was never informed of the grounds for the motion.
 

 The trustee, however, never objected to the procedure followed by the district court.
 
 [4]
 
 An appellate court will not review an issue not raised or objected to below unless necessary to prevent manifest injustice.
 
 Friedman and Jobusch, Architects and Engineers v. C.I.R.,
 
 627 F.2d 175, 177 (9th Cir. 1980).
 
 See Ahmed v. American Steamship Mutual Protection & Indemnity Association,
 
 640 F.2d 993, 996 (9th Cir. 1981). This general rule applies in appeals from bankruptcy proceedings as well.
 
 See Matter of Colorado Corp.,
 
 531 F.2d 463, 467 (10th Cir. 1976).
 

 Jonas has not shown manifest injustice, or even that the court erred in treating the motion as one for summary judgment. The whole issue raised in the proceedings below was whether the SBA was entitled to the lawsuit proceeds. Therefore, the motion to pay over brought the entire case before the bankruptcy court; in substance the SBA was requesting summary judgment. Moreover, there was no element of surprise to the trustee, unlike the situation in
 
 Winkleman v. New York Stock Exchange,
 
 445 F.2d 786, 788-89 (3d Cir. 1971), and other cases the trustee cites, where the opposing party was not prepared to respond to the substantive aspects of the motion. Finally, Jonas has not shown how 9 days notice instead of 10 was harmful. The trustee has not shown any prejudice engendered by the bankruptcy court’s treatment of the motion, and in any event his failure to object below forecloses any procedural objections.
 

 II. SBA SUPPORT FOR THE SUMMARY JUDGMENT MOTION
 

 The trustee also contends that the SBA did not make a sufficient showing to justify summary judgment. The SBA did not file any formal affidavits in support of its motion, but it did file a declaration
 
 [5]
 
 
 *1080
 
 “under penalty of perjury” by B. Mitchell Palmer, a loan specialist with the SBA who had been assigned to Southland’s case since early 1976. Palmer’s declaration outlined the arrangement approved by the court on July 8, 1976, the outstanding balance and accrued interest on Southland’s loan, and the SBA’s previous efforts to enforce the loan. Palmer concluded that the SBA had exhausted all available collateral, with the exception of the lawsuit settlement proceeds.
 

 In addition to the Palmer declaration, the bankruptcy court had before it all of the previous pleadings and papers filed in the suit. The original loan agreement and the stipulation approval of July 8, 1976, were in the court file. The bankruptcy court also was aware of the details of the lawsuit settlement, and had formally approved of the compromise. Summary judgment is proper “if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact. . . . ” Fed.R.Civ.P. 56(c). The bankruptcy court was entitled to determine whether issues of material fact existed based on the record before it; further affidavits were not necessary.
 
 See Bryant v. Carleson,
 
 444 F.2d 353, 357-58 (9th Cir.),
 
 cert, denied,
 
 404 U.S. 967, 92 S.Ct. 344, 30 L.Ed.2d 287 (1971).
 

 III. SOUTHLAND’S AUTHORITY TO GRANT A LIEN ON THE SETTLEMENT PROCEEDS
 

 Jonas argues that, as a matter of law, a security interest may not be created in a cause of action for tort. Section 9-104(k) of the Uniform Commercial Code, adopted in California, provides that the security interest provisions of the code do not apply “to a transfer in whole or in part of any ... claim arising out of tort; ”. Cal. Com.Code § 9104(k) (Deering 1970). The parties, however, did not rely on the U.C.C. security interest alone, and provided for a lien on the potential lawsuit proceeds under California Code of Civil Procedure § 688.1 (Deering 1973).
 
 [6]
 
 Section 668.1 allows a court, in its discretion, to grant a judgment creditor a lien on a cause of action and any subsequent judgment awarded to the debt- or. Therefore the stipulation between Southland and the Santiago Bank created a valid lien on the lawsuit proceeds, as long as Southland had authority to grant the lien.
 

 We conclude that Southland did have this authority. At the time of the stipulation, Southland was the debtor in possession of the cause of action. As such, Southland acted as if it was the trustee, and had the power to dispose of the property or grant a lien, subject to court approval. § 342 of the Bankruptcy Act (formerly codified at 11 U.S.C. § 742).
 
 See
 
 8
 
 Collier on Bankruptcy
 
 ¶ 6.30-6.32 (14th ed. 1978). The bankruptcy court approved the stipulation and the lien granted under section 668.1. Jonas, who was appointed trustee after the granting of the lien, is bound by the previous acts of Southland, the debtor in possession.
 
 In re Wil-low Cafeterias,
 
 111 F.2d 83, 85-86 (2d Cir. 1940);
 
 Local Joint Exec. Bd., AFL-CIO v. Hotel Circle, Inc.,
 
 419 F.Supp. 778, 789-90 (S.D.Cal.1976);
 
 aff’d.
 
 613 F.2d 210 (9th' Cir. 1980);
 
 Collier, supra
 
 at ¶ 6.32[4]. Therefore Southland created a valid lien on the lawsuit proceeds in favor of Santiago, and this lien passed to the SBA.
 

 IV. MATERIAL ISSUES OF FACT
 

 The Bankruptcy Court properly granted summary judgment if there were no genuine issues of material fact and the SBA was entitled to judgment as a matter of law. Fed.R.Civ.P. 56;
 
 Schlette v. Burdick,
 
 633 F.2d 920, 922 (9th Cir. 1980). Jonas contends that there were material issues of fact regarding the adequacy of consideration for the lien in favor of Santiago Bank,
 
 *1081
 
 the adequacy of the notice provided to the creditors, and the extent of other collateral available to the SBA.
 
 [7]
 

 A. Adequacy of Consideration
 

 There is no factual dispute regarding the consideration for the collateral arrangement. The record indicates that Southland agreed to assign the net proceeds of any recovery in its pending lawsuit; in return Santiago Bank partially released its lien on the Craig’s property, thus securing a reduction in principal, and releasing approximately $25,000
 
 [8]
 
 in working capital to Southland. Although the adequacy of consideration is generally a question of fact, the actual amounts involved are not in question and the bankruptcy court was justified in finding the consideration adequate as a matter of law.
 
 Cf. Klein v. Tabatchnick,
 
 610 F.2d 1043, 1047 (2d Cir. 1979).
 

 With the advantage of hindsight, Jonas now argues that the consideration for the collateral compromise was inadequate. “The adequacy of consideration is tested as of the time of the making of the contract, and the courts do not weigh the quantum of the consideration as long as it has some value.”
 
 A. J. Industries, Inc. v. Ver Halen,
 
 75 Cal.App.3d 751, 761, 142 Cal.Rptr. 383, 389 (1977) (citation , omitted);
 
 Crail v. Blakely,
 
 8 Cal.3d 744, 753, 505 P.2d 1027, 1034, 106 Cal.Rptr. 187, 194 (1973). As the bankruptcy court noted, “[t]he state court lawsuit was hotly contested. There were no assurances that there would be a recovery of any kind... . The debtor had proposed a plan which would return something to the creditors as against the unknowns of litigation.” In light of the highly speculative value of the lawsuit at the time South-land and Santiago entered into their agreement, it cannot now be argued that the $25,000 in capital Southland received was inadequate consideration for assigning the potential proceeds of the litigation.
 

 B. Notice to Creditors
 

 Jonas contends that the creditors were never notified of the arrangement granting Santiago Bank a lien on the lawsuit proceeds, and that there are material issues of fact regarding the extent of the notice. Bankruptcy Rule 11-24 requires 10 days notice to all creditors prior to any proposed sale, compromise or settlement. The SBA does not dispute that all of the creditors did not receive actual notice. Rule ll-24(d), however, provides that once an authorized creditor’s committee has been selected, the court may provide notice “only to the committee or to its authorized agent and to the creditors who file with the court a request that all notices under these clauses be mailed to them.” In this case, an authorized creditor’s committee had been selected, and the law firm of Neben and Starrett was the committee’s authorized agent.
 
 See
 
 Bankruptcy Rule 11 — 29(b). Ne-ben and Starrett participated in the loan renegotiations and signed the order approving the final arrangement on behalf of the committee.
 

 The declaration of Jonas’ attorney, filed in opposition to the SBA’s motion, states nothing more than his belief that the creditors were inadequately notified; this is insufficient to put any material facts into issue, because the rules specifically provide that notice to an agent of the committee is adequate.
 
 [9]
 

 See
 
 6 Pt. 2
 
 Moore’s Federal
 
 
 *1082
 

 Practice
 
 ¶ 56.22[1], at 56-1306 (2d ed. 1980). There is no contention that the committee’s attorneys acted fraudulently in approving the stipulation. Actual notice was not required and the creditors were adequately notified.
 

 C. Other Collateral
 

 Jonas’ final contention is that material issues of fact existed regarding the SBA’s disposition of other collateral. In Palmer’s declaration supporting the SBA motion, he claimed that the SBA realized over $40,000 by auctioning Southland’s inventory and equipment, and almost $3,700 from South-land’s accounts receivable. Palmer referred to a life insurance policy and an interest in a note that Southland was required to provide under the terms of the original loan agreement, but stated that these two items were never forwarded to the SBA and thus not available for execution. Palmer’s declaration was in part verified by a SBA “Certified Statement of Account” filed with the SBA motion.
 

 Jonas contends that there are material issues of fact regading what happened to the two items of collateral that were never forwarded. Palmer’s declaration, filed by the SBA, detailed the steps taken by his office to recover on the loan. Palmer specifically stated that the SBA never received the two items of collateral mentioned in the original loan agreement. For the purposes of a summary judgment motion, the SBA is not required to locate two items of collateral never received by its office, and perhaps never received by the original creditor, Santiago Bank.
 
 [10]
 

 Jonas also questions whether the accounts receivable were disposed of in a reasonable manner. After Southland entered into the compromise agreement on the loan, however, the trustee formally abandoned his right to the auctioned items, as well as the accounts receivable. In his application to the court, Jonas stated
 

 it has been established by appraisals that the assets, including the accounts receivable, will not generate the amount due on the loan and, therefore, your applicant is asking this Court to allow him to abandon the personal property to the secured parties [Santiago Bank and the SBA] herein mentioned.
 

 The trustee cannot now challenge the disposition of those assets; he agreed to abandon them with the knowledge that the secured creditors still retained a lien on the lawsuit proceeds. See 4A
 
 Collier on Bankruptcy
 
 ¶ 70.42[4], at 512 (14th ed. 1978).
 

 The declarations before the bankruptcy court do not raise material issues of fact regarding the SBA’s disposition of collateral.
 

 CONCLUSION
 

 In essence, the trustee in this case is attempting to retain the litigation settlement proceeds for the benefit of the general creditors, in spite of the SBA’s valid lien on these proceeds. The trustee is precluded from arguing that it was improper to treat the SBA’s motion as one for summary judgment, because he did not object to the procedure below. The court properly looked to the files on record in the case to grant summary judgment. Furthermore, under the California Code of Civil Procedure, Southland had the authority, as the debtor in possession, to grant a lien on the proceeds of its pending lawsuit. Finally, adequacy of consideration and notice to creditors can be determined as a matter of law. There were no material issues of fact to preclude summary judgment. The judgment of the district court, affirming the judgment of the bankruptcy court, is accordingly AFFIRMED.
 

 [1]
 

 . Chapter XI of the Bankruptcy Act of 1898 provided for an arrangement between the debt- or and its creditors, supervised by the court, which would result in a settlement, satisfaction, or extension of time to pay unsecured debts. 11 U.S.C. § 701
 
 et seq.;
 
 8
 
 Collier on Bankruptcy
 
 ¶ 1.02, at 5 (14th ed. 1978). Chapter XI allowed for a judicially supervised compromise between the parties, as opposed to liquidation and distribution under the other provisions of the Act. Southland’s petition was filed prior to October 1, 1979, and therefore the provisions of the Bankruptcy Reform Act of 1978, Pub.L. 95-598, 92 Stat. 2549 (codified at 11 U.S.C. § 101
 
 et seq.)
 
 do not apply to this case. All references and citations in this opinion are to the Bankruptcy Act, code sections, or rules of the 1898 Act, as amended.
 

 [2]
 

 . Jonas’ initial claim was filed against the SBA as an entity, but the United States filed the counterclaim because the SBA is an agency of the United States, not a separate corporate entity.
 
 Small Business Administration v. McClellan,
 
 364 U.S. 446, 449-50, 81 S.Ct. 191, 194-95, 5 L.Ed.2d 200 (1960). In this opinion we refer to the appellee as “the SBA,” recognizing that the agency stands in the shoes of the United States.
 

 [3]
 

 . Rule 56 has been incorporated and applies to all adversary bankruptcy proceedings. Bankruptcy Rule 756;
 
 In re Yellow Transit Freight Lines, Inc.,
 
 207 F.2d 602, 604 (7th Cir. 1953).
 

 [4]
 

 . In response to the court’s statement quoted in text, the trustee’s attorney stated “[w]e’re prepared to argue the motion this morning your Honor.” Later in the proceedings, the attorney admitted that the motion “probably is a motion for summary judgment.” Although the attorney mentioned that he received late notice, this was only to explain his late response. There was never any objection to treating the SBA’s motion as one for summary judgment.
 

 [5]
 

 .While the trustee questions the sufficiency of the declaration contents, he has not raised an issue, either in the bankruptcy court or on appeal, regarding the use of a declaration rather than a sworn affidavit. In fact, the trustee responded to the SBA’s motion with a declara
 
 *1080
 
 tion of his own. For the purposes of this appeal we therefore treat the declarations as though they were affidavits.
 

 [6]
 

 . A federal court should look into applicable state laws to determine the validity of a lien on assets held by the trustee.
 
 Victor Gruen Associates, Inc. v. Glass,
 
 338 F.2d 826, 829 (9th Cir. 1964).
 
 See In re Bruce Farley Corp.,
 
 612 F.2d 1197, 1200 (9th Cir. 1980) (state law governs whether a trust will be imposed).
 

 [7]
 

 . Jonas also makes a number of vague allegations regarding the motive the Craigs and Santiago Bank may have had in making the collateral arrangement in July of 1976. Jonas, however, has been unable to document any of his allegations. In essence, Jonas’ fraud argument revolves around the alleged inadequate consideration and notice, two issues discussed in detail
 
 infra.
 

 [8]
 

 . It appears that the actual amount available may have been somewhat less due to expenses and other liens on Southland’s assets.
 

 [9]
 

 .Although there have been suggestions that it might be desirable in some instances to notify all creditors, not just the committee, particularly in large and lengthy cases, 3
 
 Collier on Bankruptcy
 
 ¶ 58.05[3.1], at 503 (14th ed. 1977), this statement certainly does not preclude summary judgment where notice was provided through an agent.
 
 See generally In re Schulte-United, Inc.,
 
 59 F.2d 553, 561 (8th Cir. 1932) (minor irregularities in notice are not cause for reversal where creditors were represented at hearing and notice to each creditor would have served little purpose). Jonas has not demonstrated
 
 *1082
 
 why notice to the committee, through its authorized agent, was inadequate in this case.
 

 [10]
 

 . The trustee, of course, may still attempt to secure these two items of collateral if they are available.