OPINION
 

 POOLE, Circuit Judge:
 

 Appellant, Fred Doehring, appeals from a grant of summary judgment in favor of the bankrupt, Crown Corporation, (Crown) entered by the district court. The court held that Doehring forfeited his right to recover his $55,000 deposit as the successful bidder for one of Crown’s assets after he failed to complete the purchase. We conclude that the district court erred as a matter of law in ruling in favor of Crown and, accordingly, reverse and remand.
 

 I.
 

 In 1978 Crown was a debtor in possession in a Chapter XI bankruptcy proceeding before the district court. In an effort to reduce its outstanding debts, Crown negotiated the sale of one of its assets, the Sunset Village Apartments located in Seattle, Washington, to three individuals (buyers) for a price of $2,210,000. The final Purchase and Sale Agreement (the Agreement) provided for a $20,000 “Earnest Money Deposit” which buyers would forfeit as liquidated damages in case of default.
 

 Crown then petitioned the district court, sitting in bankruptcy, to approve and confirm the sale of the property at the agreed purchase price, or at a higher price of not less than $2,300,000 net to the seller if offered through overbids at the date set for the confirmation hearing.
 
 [1]
 
 On September 12, 1978, the district court issued an order fixing a hearing date for the confirmation of sale. The order indicated that the court would consider overbids from other potential buyers and that the minimum overbid should equal or exceed $2,320,000 “upon terms and conditions comparable to those offered by the buyer in the [Agreement]” which was attached to the order, any further overbids to be “in an amount and on terms determined by the court...”, and all such overbids to be accompanied by cash or check in the amount of $55,000.
 

 The published Notice of Hearing stated that the court would consider overbids of not less than $2,300,000 net, the minimum overbid was to be “on terms and conditions comparable to those set forth above”; overbids to be “in an amount and on terms determined by the Court” in cash plus assumption of indebtedness; and that such overbid must be accompanied by cash or check of $50,000. The Notice directed the reader to read the confirmation petition for
 
 *776
 
 more particulars. It did not itself state that the deposit would be subject to forfeiture.
 

 The “Bidding Ground Rules” distributed to potential bidders at the confirmation hearing, stated that those making overbids in open court must “submit a $50,000 [check] or cash to a representative of [Crown] in the Courtroom.” No reference was made to the Agreement.
 

 At the confirmation hearing held on October 4,1978, appellant, Fred Doehring submitted the highest bid, $2,640,000, which was accepted by the court officer conducting the sale. Doehring also submitted a check for $55,000 payable to Equity Investments, Crown’s agent handling the sale. Equity Investments, in turn, endorsed the check to the district court.
 

 Under the Bidding Rules Crown had the right to confirm the highest bidder’s financial ability to close the transaction. Shortly after the confirmation hearing, Doehring informed Crown that his financial arrangements depended on completing another real estate transaction in Houston, Texas. After making several unsuccessful demands on Doehring for additional financial guarantees, Crown terminated his bid. It eventually sold the property for a price $60,000 above Doehring’s offer.
 

 When his request for return of his deposit failed, Doehring filed this adversary proceeding against Crown in the bankruptcy action to recover the deposit with interest. Concurrently with its answer to Doehring’s complaint, Crown filed a Petition for Release of Deposited Funds (the Release Petition) claiming that it was entitled to keep the $55,000 deposit. Doehring filed opposition. At the hearing on the release petition held on July 9, 1979, the district court indicated that it would consider Doehring’s action and the Release Petition together to determine whether, as a matter of law, Doehring had forfeited his deposit. The court stated that if it concluded against forfeiture, it would give Crown an opportunity to prove its damages caused by Doehr-ing’s default. Both parties accepted this procedure and agreed to submit memoranda on the legal issue outlined by the court.
 

 The court subsequently issued its opinion on the release of the bid deposit announcing that it would treat the proceedings to date as cross motions for summary judgment “since the parties do not dispute the relevant facts of the case.”
 
 [2]
 
 It then set forth its conclusion that Crown was entitled to retain the deposit under the terms of the Agreement as incorporated into the bidding procedure. On April 10, 1980, judgment was entered authorizing Crown to recover the amount of the bid deposit from the account of the district court depositor. Doehring took this appeal.
 

 II.
 

 The district court cited the liquidated damage clause in the Agreement between Crown and the original buyers as the basis for forfeiture. It reasoned that since its order announcing a hearing date with the opportunity to bid had indicated that the terms and conditions for overbids would be comparable to those offered by the buyers in the Agreement, bidders were on notice that the liquidated damage provision of the Agreement would be in effect.
 

 The courts have rather consistently held that forfeitures are not favored in contract law and therefore any such provisions should be explicitly and clearly stated.
 
 Bornholdt v. Southern Pacific Co.,
 
 327 F.2d 18, 20 (9th Cir. 1964);
 
 United States Fidelity and Guaranty Co. v. Winkler,
 
 351 F.2d
 
 *777
 
 685, 687 (8th Cir. 1965); S. Williston,
 
 A Treatise of the Law of Contracts
 
 § 602A at 326 (3d ed. 1961 & Supp. 1981).
 

 Although the liquidated damage clause in the original contract is unambiguous, the terms of the district court’s order of sale do not unambiguously indicate that its terms are applicable to a purchase by a subsequent bidder. The order states:
 

 [A]t said confirmation hearing, the Court will consider bona fide overbids from any interested buyers. The minimum overbid, net of commissions shall not be less than $2,320,000 net to seller upon terms and conditions comparable to those offered by the buyer in the Purchase and Sale Agreement attached to said Petition. Any further overbids shall be in an amount and on terms determined by the Court at said hearing, in cash and/or by assumption of the mortgages described in [the Agreement]. ... All overbids shall be accompanied by cash, cashier’s check or certified check in the amount of $55,-000.
 

 The stated provision lends itself to the interpretation that the
 
 minimum
 
 overbid was to be on terms comparable to those offered by the buyer in the Agreement, but that the court would set the terms of additional overbids. The words “determined by the court” arguably may have been intended to refer only to payment terms, but there is no clear indication to the reader that the additional overbids were to be bound by the forfeiture provision of the original Agreement. Further, the $55,000 deposit figure required by the court bears no obvious relationship to the $20,000 liquidated damage figure contained in the Agreement. In sum, the district court’s order does not clearly indicate that the $55,-000 deposit was intended to serve the same purpose as the $20,000 earnest money deposit in the original agreement.
 
 [3]
 

 Even without incorporation of the liquidated damage clause in the agreement, the court, relying on its own authority to set the rules of a judicial sale, might well have provided for forfeiture of a bidder’s deposit upon default.
 
 See In re Chelsea Hotel Corp.,
 
 248 F.2d 171 (3d Cir. 1957);
 
 United States v. Branch Coal Corp.,
 
 390 F.2d 7, 10 (3d Cir.),
 
 cert. denied,
 
 391 U.S. 966, 88 S.Ct. 2034, 20 L.Ed.2d 278 (1968). However, such a forfeiture provision should be clear and unambiguous to provide adequate notice to potential bidders,
 
 see, e.g., Branch Coal Corp.,
 
 390 F.2d at 8, and should explicitly indicate the conditions of forfeiture.
 

 Here there was no explicit forfeiture provision in the notice of sale, the order setting the confirmation hearing, or the bidding rules distributed by the court. Therefore, since the district court did not declare its intention of making the deposit forfeitable prior to the confirmation hearing and there is no contractual forfeiture provision incorporated into the bidding terms, the court erred in declaring a forfeiture and releasing the funds to Crown.
 
 [4]
 

 On remand the district court should determine the cost of reselling the property after Doehring’s default, deduct that
 
 *778
 
 amount from the deposit and return the remainder to Doehring.
 
 See Camden v. Mayhew,
 
 129 U.S. 73, 83, 9 S.Ct. 246, 248, 32 L.Ed. 608 (1889);
 
 Gordon v. S. S. Vedalin,
 
 346 F.Supp. 1178 (D.Md.1972).
 

 REVERSED AND REMANDED.
 

 [1]
 

 . Since Crown filed its petition prior to October 1, 1979, the effective date of the Bankruptcy Reform Act of 1978, Pub.L. 95-598, 11 U.S.C. § 101, et
 
 seq.,
 
 it fell under the Bankruptcy Act of 1898, as amended, 11 U.S.C. § 1, et
 
 seq.
 
 Sections 80(f) and (g) of the old Act, and Rule 606 of the Rules of Bankruptcy Procedure require judicial approval of any sale of assets.
 
 See
 
 4 Collier on Bankruptcy ¶ 70.98 (14 ed. 1978). By contrast, the 1978 Act permits the trustee to sell property without the approval of the court under certain circumstances.
 
 See
 
 11 U.S.C. § 363.
 

 [2]
 

 . Use of the summary judgment procedure was appropriate in this case since the parties agreed as to the relevant facts and concluded that forfeiture of the deposit should be decided as a matter of law.
 
 See Smith v. Califano,
 
 597 F.2d 152, 155 n. 4 (9th Cir. 1979). Doehring’s suggestion to the contrary is simply untenable in view of his statements at the hearing below indicating his agreement with the procedure outlined by the court.
 

 Crown’s release petition was properly treated as a motion for summary judgment. Bankruptcy Rule 756;
 
 In Re Southland Supply, Inc.,
 
 657 F.2d 1076, 1078, 1079 (9th Cir. 1981). And although technically there was no motion for summary judgment pending in the adversary action Doehring filed, as the district court recognized, the Release Petition and the adversary action were “two sides of the same coin.”
 

 [3]
 

 . Even were we to agree with the district court that the contractual forfeiture clause applied to Doehring, that provision explicitly sets liquidated damages at $20,000. Any forfeiture over that amount would constitute a penalty unenforceable under law.
 
 See Priebe & Sons, Inc. v. United States,
 
 332 U.S. 407, 413, 68 S.Ct. 123, 126, 92 L.Ed. 32 (1947).
 

 [4]
 

 . Doehring’s other claims that he was entitled to withdraw his bid because no contract was formed between himself and Crown are merit-less. In particular, Doehring suggests that he was not bound because the district court never confirmed his bid. However, the courts have consistently held that a buyer in a judicial sale is bound by his bid until the court either approves or disapproves it.
 
 See e.g., Camden v. Mayhew,
 
 129 U.S. 73, 83, 9 S.Ct. 246, 248, 32 L.Ed. 608 (1889);
 
 Gordon v. Woods,
 
 189 F.2d 76, 78, (1st Cir. 1951). Similarly, Doehring argues that he was not bound because Crown never found that he was qualified to complete the purchase. Doehring’s interpretation amounts to an argument that the bidder can simply renege by refusing to turn over financial data and forcing the seller to release the bid. We refuse to accept such a proposition. Finally, Doehring argues that he informed Crown’s president that he could not complete the purchase unless he completed another transaction in Houston, Texas, and therefore the completion of the other transaction was a condition precedent to the sale here. However, Doehr-ing’s declaration does not indicate that Crown
 
 agreed
 
 to his asserted condition. See
 
 general
 
 
 *778
 

 ly, Lockwood v. Wolf Corp.,
 
 629 F.2d 603, 610 (9th Cir. 1980) (courts will not find condition precedent unless clearly stated). Moreover, after the judicial officer conducting the sale had accepted Doehring’s unconditional bid, he had no right to attach later conditions.
 
 See Estate of Vezina,
 
 116 Cal.App.2d 438, 254 P.2d 103 (1953); 104 A.L.R. 632 (conditional bids generally not recognized in a judicial sale),