**In re Larry Dean KIRKLAND and Billie Kay Kirkland, Debtors.**

**SECURITY PACIFIC NATIONAL BANK, Appellant,**

v.

**Larry D. KIRKLAND and Billie K. Kirkland, Appellees.**

**BAP No. NC–87–1743–MeAsV.**

United States Bankruptcy Appellate Panel of the Ninth Circuit.

Argued and Submitted Feb. 18, 1988.

Decided Sept. 22, 1988.

---

Richard A. Rogan, Broad, Schulz, Larson & Wineberg, San Francisco, Cal., for appellant.

Robert L. Hughes, Lempress & Wulfsberg, Oakland, Cal., for appellees.

Before MEYERS, ASHLAND and VOLINN, Bankruptcy Judges.

## OPINION

MEYERS, Bankruptcy Judge:

### I

This appeal raises the question whether a secured creditor must notify a guarantor before sale of collateral. The trial court concluded that guarantors are "debtors" under Section 9105(1)(d) of the California Commercial Code,[1] thereby entitling them to notice and other protections under Section 9504(3) and that any pre-default waiver of notice executed by guarantors is ineffective. Accordingly, the trial court held that the secured creditor's deficiency claim against the guarantors was barred under California law and, finding no material issues of fact remaining, granted summary judgment for the guarantors.

The Panel reviews a grant of summary judgment *de novo.* *In re Washburn & Roberts, Inc.,* 795 F.2d 870, 872 (9th Cir. 1986); *In re Pacific Exp. Inc.,* 69 B.R. 112, 114 (9th Cir.BAP 1986). We AFFIRM.

### II

#### FACTS

Appellant Security Pacific National Bank ("Security Pacific") entered into an unsecured credit agreement with Cascade Oil Company ("Cascade"), establishing a $1,450,000 line of credit. Appellees Larry Kirkland, Cascade's president and major shareholder, and his wife, signed an unsecured general continuing guaranty expressly waiving all notices and giving Security Pacific the power to substitute, release, decrease or alter any collateral.

Cascade first defaulted on March 31, 1981. Pursuant to a workout agreement, Cascade executed a security agreement providing Security Pacific with a secured interest in certain real property of Cascade. Security Pacific extended the credit line period to May 29, 1981. The security agreement expressly renounced any right to notice of sale of the collateral. The

---

1. All statutory references are to the California Commercial Code unless otherwise specified.

When referring to statutory subparts, we omit repetition of the word "subdivision."

Kirklands, as guarantors, consented to the collateralization in a letter agreement which provided that the "collateralization does not affect or diminish ... [the Kirklands'] obligations under the general Continuing Guaranty ...".

Security Pacific rejected Cascade's repayment proposal and the obligation was again in default. As part of a second workout arrangement, Security Pacific obtained from the Kirklands security for the previously unsecured guaranty in a second letter agreement dated June 8, 1981. The new agreement provided that the original continuing guaranty "shall remain in full force and effect." Security Pacific again extended the obligation, agreeing to a six-month moratorium until September 15, 1981.

At the end of the moratorium, Cascade again defaulted and then filed for Chapter 11. Kirkland subsequently resigned as president.

Two pieces of equipment were sold in 1983 for $59,000 by Cascade's new president, either with the consent or by the direction of Security Pacific. The Kirklands did not receive prior notice of the sales.

On January 3, 1985, the Kirklands commenced their personal Chapter 11 case. The Kirklands moved for summary judgment on their objection to Security Pacific's secured claim on the grounds that the Kirklands did not receive notice of the sales of collateral. The bankruptcy court granted summary judgment based on Security Pacific's failure to provide notice of the sales to the Kirklands and disallowed Security Pacific's deficiency claim.

## III

## DISCUSSION

### A. Guarantors are Entitled to Notice of Sale of Collateral

■ The bankruptcy court held that guarantors are synonymous with "debtors" under Section 9105(1)(d) for purposes of entitlement to Section 9504(3) protections and thus must receive notice of any sale of collateral. Appellant insists that unconditional guarantors are not entitled to Section 9504(3) protections since the guaranty is separate and independent of the primary debt to which the guarantors owe no obligation.

Under Section 9504(3), a secured party may sell or dispose of collateral if the party first provides notice to the "debtor" prior to the sale. Cal.Com.Code Section 9504(3); *Atlas Thrift Co. v. Horan*, 27 Cal.App.3d 999, 1002, 104 Cal.Rptr. 315 (1972). Notice need not be given, however, if the debtor waives the right to such notice *after* default. Cal.Com.Code Section 9504(3).

Section 9105(1)(d) defines a "debtor" as a "person who owes payment or other performance of the obligation secured, whether or not he or she owns or has rights in the collateral ...". Cal.Com.Code Section 9105(1)(d). Several California appellate and federal district courts interpreting California law have adopted the conclusion reached by "the overwhelming majority of courts ... that a guarantor is a debtor within the meaning of Section 9501(3) and therefore entitled to the rights and remedies provided by Section 9504(3), including notice." *Connolly v. Bank of Sonoma County*, 184 Cal.App.3d 1119, 1124, 229 Cal.Rptr. 396 (1986); *see also C.I.T. Corp. v. Anwright Corp.*, 191 Cal.App.3d 1420, 1426, 237 Cal.Rptr. 108 (1987), *modified* 192 Cal.App.3d 818f, 237 Cal.Rptr. 108 (1987); *U.S. v. Kurtz*, 525 F.Supp. 734 (E.Pa.1981), *aff'd* 688 F.2d 827 (3d Cir.1982) (Table) (interpreting California law).

### B. A Guarantor's Renunciation of Waiver of Notice Before Default is Ineffective

■ A "debtor" may not waive notice of sale of collateral prior to default on the obligation. Cal.Com.Code Section 9501(3); *Western Decor & Furnishings Industries, Inc. v. Bank of America*, 91 Cal.App.3d 293, 306, 154 Cal.Rptr. 287 (1979); *Krueger v. Bank of America*, 145 Cal.App.3d 204, 193 Cal.Rptr. 322 (1983). Since a guarantor is considered a "debtor" within the meaning of Section 9105(1)(d) and thus entitled to the same rights and protections

Section 9504(3) afforded to debtors, any waivers they sign as guarantors prior to default are ineffective. *Connolly v. Bank of Sonoma County, supra,* 184 Cal.App.3d at 1125, 229 Cal.Rptr. 396. "[T]he reasons ... advanced to support the conclusion that guarantors are debtors under Section 9504 are equally apposite to the waiver issue: that is, the regulatory scheme of the Code regarding disposition of collateral after default established a policy which must include guarantors to function rationally and, more importantly, cannot be nullified by prior agreement." *C.I.T. Corp. v. Anwright Corp., supra,* 191 Cal.App.3d at 1427, 237 Cal.Rptr. 108; *Ford Motor Credit Co. v. Lototsky,* 549 F.Supp. 996, 1005 (E.Pa.1982).

Several cases have permitted a guarantor to contractually waive, by the terms of the guaranty, notice and other protections otherwise afforded by law. *Rutan v. Summit Sports, Inc.,* 173 Cal.App.3d 965, 219 Cal.Rptr. 381 (1985); *U.S. v. Kurtz, supra,* 525 F.Supp. 734; *Krueger v. Bank of America, supra,* 145 Cal.App.3d 204. However, subsequent California appellate decisions have expressly declined to follow these prior holdings. *Connolly v. Bank of Sonoma County, supra,* 184 Cal.App.3d at 1124, 229 Cal.Rptr. 396; *C.I.T. Corp. v. Anwright Corp., supra,* 191 Cal.App.3d at 1426, 237 Cal.Rptr. 108; *Ford Motor Credit Co. v. Lototsky, supra,* 549 F.Supp. 996.

In the absence of a state supreme court decision on the issue, a federal court is obligated to follow a decision of an intermediate court of appeal "in the absence of convincing evidence that the highest court of the state would decide differently." *American Triticale, Inc. v. NYTCO Services, Inc.,* 664 F.2d 1136, 1143 (9th Cir. 1981); *Stoner v. New York Life Ins. Co.,* 311 U.S. 464, 467, 61 S.Ct. 336, 337, 85 L.Ed. 284 (1940). According to *Connolly* and *C.I.T. Corp.,* the complete waiver of notice of sale in the original guaranty signed by the Kirklands prior to Cascade's default is unenforceable.

C. *The Guarantors did not Waive their Right to Notice Post-default*

Section 9504(3) excuses notification of sale to the debtor if the debtor "has ...

signed after default a statement renouncing or modifying his right to notification of sale ...". Cal.Com.Code Section 9504(3). The guaranty the Kirklands signed provides: "Notice of acceptance of their guaranty as well as demands, presentments, notices of protest and notices of every kind [and] nature, including those of any action or non-action on the part of the Debtor, Bank, or anyone else, are hereby fully waived [by] the undersigned." On May 18, 1981, the parties executed letter agreements providing "the taking of this collateral by the Bank does not affect or diminish your [Kirklands'] obligations under that General Continuing Guarantee." On June 8, 1981, a second letter agreement provided the "Guaranty shall remain in full force and effect."

Appellants contend the letter agreements incorporated by reference each term and condition of the guaranty, including waiver of notice. However, even if the waiver contained in the guaranty were sufficient to renounce the right to notice of sale and was effectively incorporated in the two subsequent letter agreements, there was no valid renunciation after the latest default.

Section 9504(3), on its face, requires only that a valid renunciation be signed "after default." Cal.Com.Code Section 9504(3). Both parties assume a default by the debtor is the event used to determine whether a waiver of notice by a *guarantor* is post-default.

Cascade defaulted on three separate occasions. It initially defaulted when its note became due in March 1981. Cascade again defaulted when it failed to tender payment following an extension through May 29, 1981 and after a six-month repayment moratorium, concluding on September 15, 1981. In each instance Cascade failed to tender payment when due, Security Pacific waived the default and granted an extension on Cascade's obligation in exchange for additional security. Rather than one continuing default, however, Cascade's repeated failures to make payment at the original

due date and upon termination of each extension comprises a series of *separate* defaults. The final letter agreement dated June 8, 1981, even if incorporating the waiver provision of the original guaranty, was nonetheless executed prior to the default on the last extension. There was, therefore, no effective waiver of notice by the guarantors after the last default. Security Pacific remained obligated to send notice of sale to the Kirklands.

D. *Denial of Security Pacific's Deficiency Claim is an Appropriate Sanction if the Required Notice to the Kirklands was not Given*

Under prevailing California law, a secured party who fails to properly notice a party entitled to notice under Section 9504(3) forfeits his conditional right to obtain a deficiency judgment. Cal.Com.Code Section 9504(3); *Atlas Thrift Co. v. Horan, supra,* 27 Cal.App.3d at 1009, 104 Cal.Rptr. 315; *see also Backes v. Village Corner, Inc.,* 197 Cal.App.3d 209, 212–13, 242 Cal. Rptr. 716 (1987); *Connolly v. Bank of Sonoma Co., supra,* 184 Cal.App.3d at 1122, 229 Cal.Rptr. 396; *Rutan v. Summit Sports, Inc., supra,* 173 Cal.App.3d at 971–72, 219 Cal.Rptr 381; *Ford Motor Credit Co. v. Price,* 163 Cal.App.3d 745, 751, 210 Cal.Rptr. 17 (1985); *Western Decor & Furnishings Industries, Inc. v. Bank of America, supra,* 91 Cal.App.3d at 306–308, 154 Cal.Rptr. 287. Although we note the harshness of this rule, especially when applied to our current situation, we must apply California law as it exists and so deny Security Pacific's remaining deficiency claim for failure to notify the Kirklands before the sale of their collateral.

## IV

## CONCLUSION

We find no material issues of fact remaining and uphold the granting of summary judgment.

AFFIRMED.