**In re Mark William CROSHIER, III., Debtor.**

**Vanessa Weinberger, Movant,**

v.

**Mark William Croshier, III, and James L. Kennedy, Chapter 7 Trustee, Respondents.**

**Bankruptcy No. 98–07827–A7.**

United States Bankruptcy Court, S.D. California, San Diego Division.

Dec. 30, 1998.

Gary B. Rudolph, William P. Fennell, Sparber, Ferguson, Ponder & Ryan, San Diego, CA, for trustee.

James L. Kennedy, San Diego, CA, trustee.

Wells. B. Layman, La Mesa, CA, for Debtor.

Edgar A. Saenz, Patrick Decarolis, Jr., Decarolis, Saenz & Trope, Los Angeles, CA, for Vanessa Weinberger.

## MEMORANDUM DECISION

LOUISE DeCARL ADLER, Chief Judge.

## I.

### INTRODUCTION

Vanessa Weinberger ("Ms. Weinberger") seeks relief from stay to collect $60,000 in net settlement proceeds received by Mark William Croshier III ("Debtor") to settle his personal injury action (the "Lift Stay Motion"). Ms. Weinberger contends her secured claim encumbers the proceeds. Alternatively, she contends the Debtor assigned the proceeds in partial satisfaction of his $138,520.00 debt.

The Debtor and chapter 7 trustee ("Trustee") oppose the Lift Stay Motion. Additionally, the Trustee filed a claim objection challenging Ms. Weinberger's secured proof of claim ("Claim Objection"). The Debtor and the Trustee contend Ms. Weinberger has no perfected secured claim because she failed to perfect her lien through possession. Because she filed a secured proof of claim, Ms. Weinberger is estopped from arguing she received an absolute assignment. Having had the opportunity to

review the relevant case law, and having duly considered the evidence and the arguments of counsel, the Court sustains the Claim Objection and denies the Lift Stay Motion.

## II.

### FACTUAL BACKGROUND

Ms. Weinberger is the Debtor's former step-daughter. During this relationship, Ms. Weinberger loaned the Debtor $138,520.00. On or about November 25, 1996, the Debtor signed a "lien/assignment/contract" acknowledging this debt (the "Agreement"). The Agreement provides:

Mark Croshier [J]r. warrants and represents that said **lien/assignment/contract** is in full force & effect . . .

. . . .

This legal document is to certify that Mark William Croshier III owes Vanessa Weinberger (relation stepdaughter) $138,520 . . .

. . . .

[I]t is understood and agreed upon by both parties that Vanessa is **assigned over the full settlement amount** awarded from Mr. Croshier III's current lawsuit regarding his left arm being burnt . . .

(Emphasis added.) [Exhibit "D" to the declaration of Greg Gorman filed August 3, 1998 ("Gorman Declaration") ]

Thereafter, Ms. Weinberger sent a "Notice of Lien" to the Debtor's attorney and other interested parties which provides:

[P]ursuant to the terms and conditions of the written contract executed by Vanessa Weinberger and Mark William Croshier III . . . **and the relevant California lien statutes,** you are hereby advised of Ms. Weinberger's right of recovery of $138,-520.00 . . . out of the settlement of the above-referenced claim.

. . . .

We are hereby putting all attorneys, insurance carriers and/or parties on notice of this lien . . . **Pursuant to California Civil Code section 2872** *et seq.,* we request that we be provided with the names and addresses of all insurance carriers affording coverage to all defendants in this matter.

(Emphasis added.)[Exhibit "C" to Gorman Declaration] The Notice of Lien enclosed a document titled "CONTRACTUAL OR STATUTORY LIEN PURSUANT TO CALIFORNIA CIVIL CODE SECTION 2872 *et seq."* Ms. Weinberger provided no evidence that she filed this Notice of Lien in the Debtor's personal injury action.

In the Fall of 1997, the Debtor settled his personal injury action and netted $60,000.00 in settlement proceeds. The Debtor paid his attorney and other costs, but did not pay Ms. Weinberger.[1]

Ms. Weinberger intervened into the Debtor's marital dissolution action to enforce the Agreement, and the parties stipulated the Debtor's attorney in the personal injury action would hold the proceeds pending further court order (the "Status Quo Order").[2]

On May 18, 1998, the Family Court judge orally ruled the Agreement was "a valid document," and ordered release of the proceeds to Ms. Weinberger as a "partial payment." The court directed Ms. Weinberger to prepare a written order, and stated he would prepare a formal decision if requested. [Transcript at 1:21–25; 2:12–23]

On June 2, 1998, the Debtor filed his voluntary chapter 7 petition which invoked the automatic stay. Ms. Weinberger nevertheless filed a written order dated June 19, 1998 which the Family Court judge signed ("Order").[3] Ms. Weinberger then filed a secured

---

1. The total settlement amount is not disclosed.

2. It is unclear why Ms. Weinberger intervened into the dissolution action as opposed to the personal injury action. Additionally, it is unclear why Ms. Weinberger made no attempt to become a party in interest in the personal injury action if the Debtor purportedly assigned his full interest in the action. *See generally* Civ. Proc.Code § 367(requiring actions to be prosecuted by the real party in interest).

3. *See* Exhibit "B" to Ms. Weinberger's declaration filed August 3, 1998. Specifically, the Order dissolved the marriage, directed release of the proceeds to Ms. Weinberger and reserved jurisdiction over all other issues between the Debtor

proof of claim in this bankruptcy in the amount of $158,520.00, stating she is secured by the "P.I. Settlement."

## III.

### PROCEDURAL ISSUES

■ Ms. Weinberger's entitlement to relief from stay depends upon the validity and priority of her interest in the proceeds. Disputes to determine the validity, priority and extent of a lien or other interest in property require an adversary proceeding. Fed. R. Bankr.P. 7001(2). However, the Court consolidated the Lift Stay Motion with the Trustee's Claim Objection, which seeks to invalidate her interest.

■ A claim objection proceeding is a contested matter governed by Bankruptcy Rule 9014. *In re Aquaslide 'N' Dive Corp.*, 85 B.R. 545, 546 (9th Cir. BAP 1987). Where the facts submitted in connection with a claim objection are undisputed, the court can dispose of the objection as though it were a motion for summary judgment. Fed. R. Bankr.P. 9014; *see also Aquaslide*, 85 B.R. at 547 (deeming a claim objection a motion for summary judgment).

In the present case, the undisputed facts establish Ms. Weinberger has no valid assignment or perfected lien. Accordingly, the Court shall treat the Claim Objection as a motion for summary judgment and sustain the objection. The outcome of the Claim Objection dictates that Ms. Weinberger is not entitled to relief from stay.

## IV.

### DISCUSSION

Ms. Weinberger contends the language in the Agreement assigning the Debtor's full interest in the personal injury action "constituted a full and complete" assignment of the Debtor's interest in the lawsuit. Because the transaction was an absolute assignment, she argues Article 9 of the California Commercial Code does not apply. Alternatively, she argues the Agreement created a security inter-

est which she perfected through possession. Specifically, Commercial Code § 9305 permitted her to perfect through a bailee. The Notice of Lien and/or Status Quo Order made the Debtor's attorney her bailee.

Because the Agreement is inartfully drafted, it is unclear whether the Agreement granted an absolute assignment or a lien.[4] The Court deems it unnecessary to resolve this question because neither interest is enforceable against the Trustee.

### A. *The Assignment Created No Valid Rights in the Judgment.*

■ In determining the validity of a lien or other interest in property, bankruptcy courts must apply state law. *In re Southern California Plastics, Inc.*, 208 B.R. 178, 181 n. 3 (9th Cir. BAP 1997)(citing *McKenzie v. Irving Trust Co.*, 323 U.S. 365, 369–72, 65 S.Ct. 405, 89 L.Ed. 305 (1945)). Bankruptcy courts must first look to the decisions of the state supreme court, and in the absence of a supreme court decision, they must follow a decision of an intermediate appellate court absent convincing evidence the highest court of the state would decide differently. *In re Kirkland*, 91 B.R. 551, 554 (9th Cir. BAP 1988); *aff'd* 915 F.2d 1236 (9th Cir.1990).

■ In the present case, the California Supreme Court has spoken on the assignment issue. In *Pacific Gas & Elec. Co. v. Nakano*, 12 Cal.2d 711, 714, 87 P.2d 700 (1939), the Supreme Court held a tort cause of action is not assignable before final judgment. The Supreme Court did not distinguish between an absolute assignment and an assignment that creates a lien. Accordingly, *Pacific Gas* invalidates both types of assignments.

*Pacific Gas* involved competing interests in a personal injury judgment. The plaintiff in the personal injury action assigned one-half his interest to a creditor before the judgment was final. Thereafter, a second creditor levied upon the final judgment and asserted priority. *Id.* at 712, 87 P.2d 700. The Supreme Court awarded the proceeds to

---

and Mrs. Croshier except for the status of the marriage.

**4.** Ms. Weinberger concedes this ambiguity.

the second creditor. In doing so, the Supreme Court explained that the first assignment passed no legal rights to the judgment because the assignment of a purely tort cause of action prior to final judgment was invalid. *Id.* at 714, 87 P.2d 700.

*Pacific Gas* has been extensively cited and its holding was recently acknowledged in *McKee v. National Union Fire Ins. Co.*, 15 Cal.App.4th 282, 288, 19 Cal.Rptr.2d 286 (1993)(recognizing that prior to final judgment a plaintiff with personal injuries has only a chose in action, and this type of claim is not assignable). Additionally, the California Commercial Code which governs security interests in personal property, recognizes a tort claim is not assignable. Section 9104(k) provides Article 9 does not apply to "[a] transfer in whole or in part of any claim arising out of a tort." The accompanying Commercial Code Comment cites *Pacific Gas,* and indicates a tort cause of action before final judgment is not assignable.[5]

California recognizes an exception to this prohibition for an attorney's charging lien upon a prospective judgment to secure payment of legal services incurred in the action. *Cetenko v. United California Bank,* 30 Cal.3d 528, 531, 179 Cal.Rptr. 902, 638 P.2d 1299 (1982); *Haupt v. Charlie's Kosher Market,* 17 Cal.2d 843, 845–6, 112 P.2d 627 (1941). Although not perfected, public policy supports upholding liens securing payment of related legal fees because persons with meritorious claims could otherwise be deprived of legal representation. *Cetenko,* 30 Cal.3d at 535–36, 179 Cal.Rptr. 902, 638 P.2d 1299. This type of lien is an "equitable assignment" and is valid even though a tort cause of action is in itself not assignable. *Haupt,* 17 Cal.2d at 845–6, 112 P.2d 627.

There have been some decisions which have upheld prior contractual liens despite the holding of *Pacific Gas.* These decisions

recognized a contractual lien cannot be perfected under Article 9. Nevertheless, they upheld the lien and granted it priority over a subsequent judicial lien. For example, *Bluxome Street Assoc. v. Fireman's Fund Ins. Co.,* 206 Cal.App.3d 1149, 1158–59, 254 Cal. Rptr. 198 (1st Dist.1988), upheld a contractual lien in a tort cause of action against a subsequent creditor who filed a "notice of lien" in the action.[6] The court recognized the contractual lien was not an equitable charging lien because it secured **unrelated** services, and the attempted perfection under Article 9 was a legal nullity. *Bluxome,* 206 Cal.App.3d at 1154–56, 254 Cal.Rptr. 198. Nevertheless, the lien was deemed a valid contractual lien under Civil Code § 2881,[7] and afforded "first in time" priority over the subsequent notice of lien. *Id.* at 1156, 254 Cal.Rptr. 198. Although factually similar, the court never mentioned *Pacific Gas.* It appears *Bluxome*'s holding is contrary to *Pacific Gas,* which has never been overruled.

Similarly, *In re Southland Supply Inc.,* 657 F.2d 1076 (9th Cir.1981), the Ninth Circuit Court of Appeals upheld a contractual lien in a tort cause of action notwithstanding its recognition that Article 9 did not permit the lien to be perfected. The trustee, who replaced the debtor in possession after the lien was granted, challenged the lien because it could not be perfected under Article 9 of the Commercial Code. The court of appeals held the trustee was bound by the previous acts of the debtor in possession who had the power to grant the lien as additional collateral for postpetition financing. *Southland Supply,* 657 F.2d at 1080. Further, the appellate court reasoned the bankruptcy court had approved the financing agreement and the lien granted under Civil Procedure Code § 688.1. *Id.* It does not appear the creditor in *Southland Supply* was eligible to perfect a

---

5. The California Commercial Code mirrors the Uniform Commercial Code. The Uniform Commercial Code Comment explains that a tort claim before judgment does not customarily serve as commercial collateral.

6. Civil Proc.Code § 708.410 *et seq.* permits a judgment creditor to obtain a lien in a pending action by filing a "notice of lien" in the action. This section replaced Civil Procedure Code

§ 688.1 which previously governed a notice of lien.

7. Section 2881 is included in Article of 2 of Title 14 of the Civil Code governing "liens." It provides: "A lien is created: 1. By contract of the parties; or, 2. By operation of law." Ms. Weinberger cites this Title as governing her lien; although she references no particular section.

lien under Civil Procedure Code § 688.1. Indeed, after *Southland Supply* was decided, the California Supreme Court confirmed Section 688.1 does not apply to contractual liens. *Cetenko*, 30 Cal.3d at 533–34, 179 Cal.Rptr. 902, 638 P.2d 1299. Although the Ninth Circuit's construction of California law would normally bind this Court, the Court believes the Ninth Circuit would not have upheld the lien's validity under Civil Procedure Code Section 688.1 had it had the benefit of the *Cetenko* holding.[8]

In the present case, it is irrelevant whether the Debtor assigned Ms. Weinberger absolute ownership or a lien. Either way, the Court is bound by *Pacific Gas* which holds the assignment of a tort claim before final judgment is invalid. The Commercial Code recognizes the holding of *Pacific Gas*, and for this reason excludes tort claims from its comprehensive perfection scheme. Accordingly, Ms. Weinberger's citation to Commercial Code § 9305 is irrelevant, and the Court need not consider whether the Debtor's attorney acted as her bailee.

The Court recognizes attorneys' charging liens are excepted from the holding of *Pacific Gas* because they arise in equity. It is possible the California Supreme Court would recognize another exception for a two party dispute between the debtor and the creditor-assignee. Upholding the assignment between the parties accomplishes the goal of discouraging creditors from utilizing tort claims as customary commercial collateral (because they risk an intervening judgment creditor); yet prevents debtors from reneging their agreements as the Debtor did in this case. Indeed, *Southland Supply* suggests a debtor in possession is bound by an assignment which is otherwise invalid because it deemed the trustee bound by the conduct of the debtor in possession. If this equitable exception is recognized, the assignment would likely be construed as a lien which is not invalid *per se,* but is not perfected against third parties.[9]

### B. *The Trustee Can Avoid the Lien.*

■ Because Ms. Weinberger might be able to enforce the lien against the Debtor, the Court considered the Trustee's argument that he can avoid the lien under 11 U.S.C. § 544(a).[10]

Ms. Weinberger could have cited *In re Hilde*, 120 F.3d 950, 952 (9th Cir.1997) to argue her lien is enforceable against the Trustee because she has a contractual lien recognized under Civil Code § 2881 with no state law mechanism of perfection. Indeed, Article 9 **excludes** her lien from its statutory perfection scheme thereby confirming the lien need not be perfected. However, upholding the lien against the Trustee would turn *Hilde's* rationale on its head.

Significantly, the lien in *Hilde* was not a contractual lien. It was a judgment lien created in connection with an order for judgment debtor's examination ("ORAP lien") under California's Enforcement of Judgment Law ("EJL"). *Hilde*, 120 F.3d at 952. In upholding the lien, the Ninth Circuit deferred to the detailed statutory EJL and the legislative intent to allow creditors a *"speedy and inexpensive means ... to obtain priority over other creditors ..."* *Id.* at 954 (emphasis in original). Because the California legislature intended the lien to be enforceable against a subsequent creditor, the Ninth Circuit reasoned the lien was enforceable against the trustee. *Id.* at 956.

Since Ms. Weinberger does not have a judgment lien, she cannot benefit from the

---

**8.** To qualify her contractual lien as a Section 688.1 lien [Civil Proc.Code § 708.410 *et seq.*], Ms. Weinberger was required to file her Notice of Lien and a certified copy of the judgment in the Debtor's personal injury action. Civil Proc. Code § 708.410(b). Even assuming a contractual lien could be perfected under this notice of lien procedure—a proposition *Cetenko* rejects— she did not comply with this procedure.

**9.** *See e.g. LiMandri v. Judkins,* 52 Cal.App.4th 326, 343, 60 Cal.Rptr.2d 539 (4th Dist.1997)(concluding that granting a lien in a tort cause of action is not invalid *per se,* but such a lien is not entitled to the benefits of Article 9).

**10.** Sections 544(a)(1) and (2) permit a trustee to avoid an unperfected lien if a hypothetical judicial lien or execution creditor whose lien arose on the petition date could avoid the lien. *In re Raiton,* 139 B.R. 931, 934 (9th Cir. BAP 1992); *see generally* Ahart, *Enforcing Judgments and Debts,* § 6:145 at 6A–44 (enumerating the types of judicial liens available to judgment creditors).

holding of *Hilde.* Accordingly, the Trustee as the ideal hypothetical judgment creditor can avoid the lien.

### C. *The Family Court Merely Affirmed the Debt.*

Ms. Weinberger also points to the orders in the Family Court as a basis to uphold her right to the proceeds. However, the Family Court merely ruled the Agreement created a valid debt, and the proceeds should be released to Ms. Weinberger in partial payment of this debt. [*See* Transcript at 2:12–15; Order at ¶¶ 2–3]. The decision acknowledging the debtor-creditor relationship does not transmute Ms. Weinberger's rights into a perfected lien.

 Even assuming the Family Court upheld the lien, the Debtor's bankruptcy intervened. The Order was submitted and signed postpetition in violation of the automatic stay. It is well settled that acts taken in violation of the automatic stay are void. *In re Schwartz,* 954 F.2d 569, 571(9th Cir. 1992).[11] Ms. Weinberger argues signing the judgment was a "mere ministerial act." However, in this Circuit the "mere ministerial act" exception remains an open question. *In re Turner,* 204 B.R. 988, 991 (9th Cir. BAP 1997). Moreover, the Family Court's oral ruling indicated more than a mere ministerial act remained. The judge offered to prepare a detailed decision and directed Ms. Weinberger to prepare the Order, which she submitted seventeen days after the petition date. Accordingly, the Family Court Order does not affect this Court's decision.

## V.

### CONCLUSION

The Debtor's purported absolute assignment of his pending personal injury action to Ms. Weinberger was invalid under the controlling precedent of *Pacific Gas.* Additionally, *Pacific Gas* suggests an assignment that grants a lien is also invalid. Because of *Pacific Gas,* the Commercial Code excludes liens in a tort claim from its comprehensive perfection scheme. Ms. Weinberger's lien

does not qualify as an equitable charging lien; nor was she a judgment creditor eligible to perfect her lien under the notice of lien statute. Although the Court declines to follow other decisions which veer from the broad precedent of *Pacific Gas,* the Court leaves unanswered the question of whether an assignment should be upheld against a debtor where the rights of third parties are not implicated.

Although the lien might be valid against the Debtor, it is not enforceable against the Trustee. The Trustee can avoid the lien under 11 U.S.C. §§ 544(a)(1) and (2) because he is the ideal hypothetical lien creditor. The Ninth Circuit's decision *In re Hilde* is distinguishable because it involved an ORAP lien created in connection with an order for a judgment debtor's examination. The Ninth Circuit relied upon California's legislative intent to uphold the lien. In contrast, Ms. Weinberger has no similar statutory framework supporting her lien.

Ms. Weinberger is a general unsecured creditor who has no special right to the proceeds. The Family Court Order does not alter this result. The Order merely upheld the debtor-creditor relationship, and was entered in violation of the automatic stay.

Because Ms. Weinberger has no enforceable lien against the Trustee, the Court sustains the Claim Objection and denies the Lift Stay Motion. This Memorandum Decision is in lieu of findings of fact and conclusions of law. Counsel for the Trustee is directed to lodge an order. In accordance with this Memorandum Decision within ten (10) days of the date of its entry.

---

11. The portion of the Order dissolving the marriage did not violate the automatic stay because it had no financial impact on the estate. *In re Stringer,* 847 F.2d 549, 553 n. 7 (9th Cir.1988).