[No. B138534. Second Dist., Div. Six. Sept. 7, 2000.]

ATASCADERO FACTORY OUTLETS, INC., Plaintiff, v.
AUGUSTINI & WHEELER LLP, Defendant and Appellant;
SANTA LUCIA NATIONAL BANK et al., Defendants and Respondents.

## COUNSEL

Augustini & Wheeler, Alfred E. Augustini, David C. Wheeler and Jacquetta M. Bardacos for Defendant and Appellant.

Law Offices of Robert M. Jones and Robert M. Jones for Defendant and Respondent Santa Lucia National Bank.

Pricer, Postel & Parma, J. Terry Schwartz and Christopher E. Haskell for Defendant and Respondent Wallace Moir Company.

## OPINION

**YEGAN, J.**—Augustini & Wheeler LLP (A&W) appeals from a judgment in interpleader, entered after the trial court found that its lien for attorney fees was subordinate to the claims of two secured creditors. The trial court concluded that the doctrine of unjust enrichment, a recognized exception to the Uniform Commercial Code lien priority system, did not apply. (See *Knox v. Phoenix Leasing Inc.* (1998) 29 Cal.App.4th 1357 [35 Cal.Rptr.2d 141].) We affirm.

In 1994, Camino Real Fashion Outlets, Ltd. (Camino) borrowed $400,000 from Santa Lucia National Bank (Bank) to complete a mall project. Thereafter, Camino sold the mall to Atascadero Factory Outlets, Inc. (AFO) and agreed to pay the broker, Wallace Moir Company (Broker), a $250,000 commission. The sale generated no cash. Instead, Camino received a "Contingent Payment Obligation Note Secured By Deed of Trust" (note) estimated to be worth $3.5 million. The note provided that the sales price would be determined after the mall opened based on a formula that took into account construction costs, rents, operating expenses, and other items.

Camino assigned the note to Bank as security on the loan. Camino executed a pledge agreement providing that Bank would receive the first $400,000 and Broker would receive the next $100,000 on the note.[1]

In January 1996, AFO claimed the payoff amount was zero. Camino retained the law firm of A&W and sued on the note for $3.5 million. (*Camino Real Fashion Outlets, Ltd. v. Atascadero Factory Outlets, Inc.* (Super. Ct. Santa Barbara County, No. SB212640).) After the action was ordered to arbitration, Camino signed a retainer agreement which gave A&W a lien on the case. A&W knew about the pledge agreement but did not ask Bank and Broker to subordinate their security interests.

The arbitrator awarded $360,359 on the note plus $140,000 attorney's fees. Neither Bank nor Broker participated in the arbitration. While they received a favorable result, A&W did not go forward on the arbitration with the intent of benefiting them.

---

[1]We parenthetically observe that were we to rule in favor of A&W, we would, in effect, erase Camino's signature from the pledge agreement. A&W's rights arise from and are dependent upon Camino's rights. We also observe that were we to rule in favor of A&W, Broker would receive no payment for its services. Such a result would be harsh.

AFO interpled the $500,359 based on the conflicting claims of Bank ($400,000), Broker ($100,000), and A&W ($176,000).[2] Citing *Knox v. Phoenix Leasing Inc., supra,* 29 Cal.App.4th 1357, A&W argued that it should be paid first. It theorized that but for its legal services, AFO would have paid nothing. Bank and Broker contended that they had lien priority as secured creditors under the Uniform Commercial Code. (Cal. U. Com. Code, § 9102 et seq.)

The trial court found that "there certainly is a good policy reason why the UCC should be enforced. So I'm inclined to deny the claim of A&W for their extra fees in this case. [¶] As counsel [for Bank and Broker] indicated, they [A&W] always have—they always have the recourse to their clients for those fees. . . . I don't think that they're in line for any payment, I guess, against these two creditors that have secured claims." The court awarded $400,000 to Bank and $100,000 to Broker, leaving no remaining funds for A&W.

In *Knox v. Phoenix Leasing Inc., supra,* 29 Cal.App.4th 1357, 1368 (*Knox*), the Court of Appeal concluded that a claim for unjust enrichment did not subordinate the lien of a secured creditor. There, an unsecured creditor sold wine barrels to a winery. A leasing company financed the purchase and had winery execute a security agreement which pledged as security, equipment owned or later acquired by winery. After the barrels were shipped, winery defaulted on the loan. The leasing company sold all of winery's assets including the wine barrels.

The Court of Appeal held that the leasing company had a "rebuttable preference for payment" under the Uniform Commercial Code. (*Knox, supra,* 29 Cal.App.4th at p. 1364.) "[U]nless there are unusual circumstances the equitable remedy of restitution must defer to the rights given a secured creditor by the California Uniform Commercial Code. [Fn. omitted.]" (*Id.,* at p. 1359.) The court stated that equitable exceptions may arise where the " 'secured creditor initiates or encourages transactions between the debtor and suppliers of goods or services, and benefits from the goods or services supplied to produce such debts.' [Citation.] These situations present a fertile opportunity for trapping the unwary. If what the secured creditor did or failed to do can be reached by the doctrines of estoppel, misrepresentation not amounting to fraud, or mistake, the code allows redress to an innocent supplier ([Cal. U. Com. Code,] § 1103). . . . If it had an active hand in promoting a transaction that goes bad, a secured creditor should not escape

---

[2]A&W's fees totaled $279,498.41. Camino paid A&W $102,793.49, leaving a balance of $176,704.92.

with a victimized supplier left behind holding an empty bag alone. In simple terms, the creditor should not be allowed to profit from the wrong of its own bad faith. [Citations.]" (*Id.*, at p. 1365.)

█ Applying the above principles, the trial court reasonably concluded that the doctrine of unjust enrichment did not give A&W lien priority. Assuming, without deciding, that the Uniform Commercial Code and the cases applying it are here apposite, A&W has not demonstrated, as a matter of law or equity, that it has lien priority.[3] Civil Code section 3525 provides: "Between rights otherwise equal, the earliest is preferred." (See also Civ. Code, § 2897; *Cetenko v. United California Bank* (1982) 30 Cal.3d 528, 534 [179 Cal.Rptr. 902, 638 P.2d 1299, 34 A.L.R.4th 657] [lien for attorney's fees].) Bank and Broker perfected their security interests two years before Camino gave A&W a lien on the note proceeds. A&W knew, or should have known, that its lien was third in terms of time. It did not look to Bank or Broker for payment, and for good reason. Under the terms of the pledge agreement, Camino was authorized to sue on the note but was responsible for all fees and costs.[4] Bank and Broker did not ask A&W to prosecute the action or offer to pay the litigation costs.

The court in *Knox* stated that "exceptional situations will arise" permitting the unsecured creditor to recover on a theory of unjust enrichment, but "simply pointing to benefit realized by the secured creditor will not suffice. [Citation.] Something more is required to displace the creditor's favored position." (*Knox, supra,* 29 Cal.App.4th at p. 1365.)

This is not an "exceptional situation." Bank and Broker had no communication with A&W that gave rise to an implied contract. As secured creditors, their acquiescence to the collection action did not render them liable for Camino's litigation expenses. (*Knox, supra,* 29 Cal.App.4th at p. 1367.) "Where a secured creditor does not itself initiate or encourage [fn. omitted] the transaction that creates the unsecured obligation giving rise to the unjust enrichment claim, retention of any benefit realized by the secured

[3]The note sued upon and which gave rise to the interpled $500,359, was secured by a deed of trust on real property. Generally speaking, creation and/or enforcement of such a note would be considered a real property transaction not involving "goods" within the meaning of the Uniform Commercial Code. (See 3 Witkin, Summary of Cal. Law (9th ed. 1987) Sales, § 30, pp. 31-32; compare Cal. U. Com. Code, § 9104, subd. (j) with Cal. U. Com. Code, § 9102, subd. (3); see also *Lovelady v. Bryson Escrow, Inc.* (1994) 27 Cal.App.4th 25, 29 [32 Cal.Rptr.2d 371])

[4]The 1994 pledge agreement states: "The costs of collection and enforcement, including attorneys' fees and legal expenses, shall be at the expense of the Pledgor [Camino]. The Pledgor will reimburse any costs or expenses, including attorneys' fees and legal expenses, that are incurred by the Pledge Holder."

creditor without compensating the supplier is not unjust and thus an unjust enrichment claim cannot be supported." (*Ninth Dist. Prod. Credit v. Ed. Duggan* (Colo. 1991) 821 P.2d 788, 797; see Annot., Liability of Secured Creditor Under the Uniform Commercial Code to Third Party on Ground of Unjust Enrichment (1995) 27 A.L.R.5th 719, 734, § 3.)

A&W made a business decision to represent Camino based on the expectation that the note proceeds would be sufficient to make its client whole and satisfy all liens. Unfortunately, A&W's expectation was not realized. Camino paid $102,000 in fees and costs. After it ran out of money in July of 1998, A&W changed the fee arrangement to a contingency fee contract and doubled its fees.

The trial court reasonably concluded that A&W could not shift the litigation costs to Bank and Broker. "The mere fact that the secured collateral was enhanced by [A&W's legal services] does not support liability in these circumstances." (*Knox, supra,* 29 Cal.App.4th at p. 1368.) The assertion that A&W provided services essential to create or preserve the collateral is without merit. The note was secured by a deed of trust that encumbered the mall property. Bank also had the option of suing on the personal guarantees of Camino's partners. The Uniform Commercial Code immunizes secured creditors from unjust enrichment claims "in all but the rarest of cases." (*Knox,* at p. 1368.) This is not one.

The judgment is affirmed. Bank and Broker are awarded costs on appeal.

Gilbert, P. J., and Perren, J., concurred.

Appellant's petition for review by the Supreme Court was denied December 20, 2000.