[No. B144972. Second Dist., Div. Three. Apr. 19, 2002.]

PANGBORN PLUMBING CORPORATION et al., Cross-complainants and Appellants, v.
CARRUTHERS & SKIFFINGTON et al., Cross-defendants and Respondents;
AMERICAN BENEFIT PLAN ADMINISTRATORS, Claimant and Respondent.

**COUNSEL**

Westrup, Klick & Associates, R. Duane Westrup and Lawrence R. Cagney for Cross-complainants and Appellants.

Reich, Adell, Crost & Cvitan, Alexander Cvitan, J. David Sackman and Neelam Chandna for Claimant and Respondent.

Haight, Brown & Bonesteel, John W. Sheller and Nancy E. Lucas for Cross-defendants and Respondents.

## OPINION

**CROSKEY, J.**—In this case, we address the issue of the relative priorities and enforcement of a judgment lien and a competing contractual lien for attorney's fees claimed by the debtor's law firm for its work in creating the very fund from which the creditor seeks to satisfy its judgment lien. For the reasons discussed below, in this factually complex case, we conclude that the law firm's contractual lien has priority.

### FACTUAL AND PROCEDURAL BACKGROUND[1]

American Benefit Plan Administrators (Benefit Administrators) sued Pangborn Plumbing Corporation and R. Pangborn (collectively Pangborn) for failing to fund Pangborn's employees' benefit plan. Benefit Administrators recovered a judgment of approximately $35,000 against Pangborn. The relationship between Benefit Administrators on the one hand, and Pangborn on the other, thus became that of judgment creditor and judgment debtor, and, for purposes of this appeal, we shall henceforth refer to Pangborn as Debtor and to Benefit Administrators as Creditor.

Debtor's surety company, Insurance Company of the West (ICW), sued Debtor (the accounting litigation). Debtor cross-complained against (1) ICW, (2) Carruthers & Skiffington, Debtor's own accounting firm, and (3) two of Carruthers & Skiffington's principals, Robert and Gary Carruthers. (We shall refer to Carruthers & Skiffington and Robert and Gary Carruthers collectively as Accounting Firm.) Debtor retained the law firm of Westrup, Klick & Associates (WKA) to represent it in the accounting litigation, and entered into a contract that provided for a lien for attorney's fees to be paid out of any proceeds Debtor might recover in the accounting litigation.

Creditor, aware of the pending accounting litigation, gave notice, under Code of Civil Procedure section 708.410 et seq.,[2] to all parties to such

---

[1]The facts in this case are not in dispute; the parties simply disagree about the legal effect of such facts.

[2]All further statutory references are to the Code of Civil Procedure except as otherwise noted.

Section 708.410 provides: "(a) A judgment creditor who has a money judgment against a judgment debtor who is a party to a pending action or special proceeding may obtain a lien under this article, to the extent required to satisfy the judgment creditor's money judgment, on both of the following:

"(1) Any cause of action of such judgment debtor for money or property that is the subject of the action or proceeding.

"(2) The rights of such judgment debtor to money or property under any judgment subsequently procured in the action or proceeding.

litigation that Creditor was asserting a judgment lien against any proceeds Debtor might obtain.

Debtor settled with Accounting Firm. The terms of the settlement required that Accounting Firm pay the settlement proceeds to WKA to hold in trust. Under the applicable law, however, Accounting Firm had a duty *not* to pay such proceeds to Debtor without the consent of Creditor or a court order. (§ 708.440, subd. (a).) However, despite the notice of judgment lien that had been given by Creditor, the settlement proceeds were paid over in trust to WKA, although neither Creditor's consent nor a court order had been obtained before the funds were transferred to WKA's client trust account for Debtor.

A few months later, Creditor sought relief from the settlement. It did not raise any equitable arguments that its judgment lien should be given priority over the contractual lien for attorney's fees, nor did it seek relief pursuant to section 473. Instead, it simply asked that the settlement between Debtor and Accounting Firm *be set aside* because the settlement proceeds, contrary to Creditor's statutory notice, had been paid out without any notice to it and without its consent. Creditor thereby eschewed any objection to the reasonableness of the settlement and to the amount of attorney's fees that WKA had claimed for its services (and as to which its claimed contractual lien would apply). In short, Creditor's argument was that, under section 708.440, subdivision (a), the settlement was void. Notably, Creditor also moved for judgment against Accounting Firm, pursuant to sections 708.440, subdivision (b) and 708.470, subdivision (c).

Accounting Firm opposed the motion to set aside the settlement. It admitted that its law firm, Haight, Brown & Bonesteel, had Creditor's notice of judgment lien in its files, but claimed the law firm did not know that

"(b) To obtain a lien under this article, the judgment creditor shall file a notice of lien and an abstract or certified copy of the judgment creditor's money judgment in the pending action or special proceeding.

"(c) At the time of the filing under subdivision (b) or promptly thereafter, the judgment creditor shall serve on all parties who, prior thereto, have made an appearance in the action or special proceeding a copy of the notice of lien and a statement of the date when the notice of lien was filed in the action or special proceeding. Service shall be made personally or by mail. Failure to serve all parties as required by this subdivision does not affect the lien created by the filing under subdivision (b), but the rights of a party are not affected by the lien until the party has notice of the lien.

"(d) For the purpose of this article, an action or special proceeding is pending until the time for appeal from the judgment has expired or, if an appeal is filed, until the appeal has been finally determined."

Creditor had a lien on the *settlement* proceeds. It also blamed WKA for not bringing up the issue of the judgment lien at the time the parties entered into the settlement, and contended that, in any event, there was enough money in the Debtor's client trust fund to satisfy the judgment lien. It urged that the settlement was reasonable and wise, and should not be set aside, and that the only issue was who should pay Creditor's judgment lien.

Accounting Firm urged that Debtor, not Accounting Firm, should be required to satisfy Creditor's judgment lien. The reasons Accounting Firm gave to justify this argument were that (1) otherwise, Debtor would be unjustly enriched if it received the settlement proceeds and Accounting Firm was forced to pay off Debtor's judgment in favor of Creditor; (2) a constructive trust existed over the moneys in WKA's client trust fund, based on Accounting Firm's mistaken belief that Debtor was entitled to the full settlement proceeds; (3) there was enough money in the client trust account to pay off the judgment lien; and (4) WKA, Debtor's law firm, upon receipt of such funds, had become a fiduciary vis-à-vis Creditor, because the law firm had received money on behalf of a third party who was not the firm's client (i.e., Creditor), for which proposition Accounting Firm cited *Johnstone v. State Bar* (1966) 64 Cal.2d 153 [49 Cal.Rptr. 97, 410 P.2d 617].

Debtor, like Accounting Firm, also opposed Creditor's motion to set aside the settlement, and also objected to Accounting Firm's suggestions as to how the matter should be resolved. Debtor asserted that although there was still money in WKA's client trust account, the amount of money needed to satisfy the contractual lien for attorney's fees had not stabilized, since there was more legal work to be done in the accounting litigation. In fact, Debtor contended, it was likely that the amount owed for the legal work would exceed the settlement proceeds. Debtor also argued that the transfer of the settlement proceeds had not harmed Creditor because WKA had always had a superior lien over all proceeds from the accounting litigation, and it appeared likely that all such proceeds would be used up in litigation costs, and would never end up as an asset available for the benefit of Debtor's creditors.

In reply, Creditor raised an equitable argument as to priority, along with other issues. It urged that (1) the settlement was void because it was obtained without notice to, or consent from, Creditor; (2) Creditor was entitled to a mandatory judgment in its favor and against Accounting Firm, pursuant to section 708.470, subdivision (c), because Accounting Firm had transferred money to Debtor without Creditor's consent or a court order; (3) the

contractual lien for attorney's fees should not be said to extend for services not yet rendered, because recent federal authority cast doubt on the validity of a contractual lien for unearned attorney's fees (Creditor cited *In re Croshier* (Bankr. S.D.Cal. 1998) 228 B.R. 468, 472, a case that, notably, did not involve a contractual lien for attorney's fees), and therefore WKA must be required to provide an accounting of the fees actually *earned* thus far; and (4) the equities favored giving priority to the claims of Debtor's employees, whose already rendered and not fully compensated services formed the basis of Creditor's judgment lien, versus giving priority to the claims of Debtor's law firm for work still to be performed.

As to this final appeal to equity, Creditor stressed that Debtor's employees had already performed the work for which they had been promised pension, vacation and health benefits, while WKA, "sit[ting] in [its] downtown Long Beach tower," claimed a lien for which it had not yet performed the work. Creditor then cited the California Constitution (art. XIV, § 13, which provides for mechanics' liens), various statutes giving employees liens for wages under certain circumstances, and even the Bible. (Deuteronomy 24:14-15.) Finally, it reiterated the relief it sought: vacation of the settlement, a judgment in favor of Creditor and against Accounting Firm, and an accounting from WKA as to the fees it had earned thus far.

Thereafter, Accounting Firm made a motion to set aside the dismissal of the accounting litigation, vis-à-vis itself, so that the trial court would have jurisdiction to retroactively authorize the settlement, determine the lien priorities, and order that Creditor seek to satisfy its judgment lien from the settlement proceeds, rather than by way of a judgment against Accounting Firm pursuant to section 708.470, subdivision (c). Accounting Firm based its motion to set aside the dismissal on section 473, subdivision (b), and asserted that its law firm was under the mistaken impression that there was no applicable judgment lien. It contended that if its law firm had known that there was such a lien, it would not have paid over the settlement proceeds to Debtor without written consent from Creditor.

The end result of these various motions was that trial court affirmed the settlement as fair and reasonable. It then ordered WKA to pay Creditor's judgment lien with the trust account funds. ██ ██ Debtor has appealed from this last order.[3]

---

[3]This is an appealable order because it purports to finally resolve all issues between these particular parties (Debtor, Creditor, and Accounting Firm) (Eisenberg et al., Cal. Practice

## CONTENTIONS ON APPEAL

Debtor contends that the trial court erred by; (1) treating Creditor's judgment lien as having priority over Debtor's law firm's contractual lien, and (2) ignoring the statutory scheme set out in section 708.410 et seq., which scheme limits Accounting Firm's and Creditor's remedies. Accounting Firm and Creditor dispute this. Creditor also contends that this appeal should be dismissed, because it is not actually being prosecuted by Debtor, but rather by WKA.

## DISCUSSION

### 1. *The Appeal Is Proper*

We necessarily deal with the predicate standing issue first.

Creditor claims that WKA, not Debtor, is the real party in interest here, and that therefore the appeal should be dismissed. While it is true that WKA asserts a contractual attorney's fee lien over the moneys in Debtor's client trust account, that does not mean that such funds *belong* to WKA rather than to Debtor, or that Debtor itself has no interest in making sure such funds are used to pay one creditor rather than another. In fact, Debtor obviously has an interest in being able to retain legal representation, given its current involvement in the accounting litigation, which means it has an interest in being able to pay for such continuing representation.

Public policy favors giving attorneys' contractual liens for legal services priority over judgment creditors' liens. It is often crucial for debtors to be able to retain legal counsel, and a debtor's ability to retain counsel may also accrue to the benefit of the client's creditors. (*Cetenko v. United California Bank* (1982) 30 Cal.3d 528, 535-536 [179 Cal.Rptr. 902, 638 P.2d 1299, 34 A.L.R.4th 657] (*Cetenko*).) Thus, a judgment that interferes, directly or indirectly, with a party's ability to retain counsel may be said to aggrieve that party.

For example, in *Roa v. Lodi Medical Group, Inc.* (1985) 37 Cal.3d 920 [211 Cal.Rptr. 77, 695 P.2d 164], a medical malpractice action, some of the

Guide: Civil Appeals and Writs (The Rutter Group 2000) ¶ 2:91, pp. 2-47 to 2-48 and cases cited there), required no further judicial action and left nothing to be done but to enforce what had been determined (*id.*, ¶ 2:37 at p. 2-21 and cases cited there), and enforced the parties' settlement agreement. (*Id.*, ¶ 2:41.6 at p. 2-23 and case cited there.)

defendants settled with the plaintiffs, and the trial court was called upon to approve the settlement. The plaintiffs asked that their attorneys receive contingent fees in the percentage-of-the-proceeds amount agreed upon in their retainer agreement—which was more than allowed by Business and Professions Code section 6146. The trial court noted that the work performed was worth the higher amount, but refused to grant the request, concluding that it was prohibited by law from doing so.

The plaintiffs appealed from this decision, contending the law was unconstitutional, and the defendants moved to dismiss the appeal on the ground that the plaintiffs were not the parties aggrieved by the law. The defendants argued that only the plaintiffs' *attorneys* were aggrieved by order limiting attorney's fees, and thus were the only proper party to prosecute the appeal. The California Supreme Court rejected the defendants' argument, holding that, in fact, the plaintiffs, rather than the plaintiffs' attorneys, could maintain the appeal because the plaintiffs were aggrieved by the potential effect of the limitation on their attorneys' incentive to pursue additional recovery against the remaining defendants who are not covered by the settlement.

So, too, here, Debtor is aggrieved by a decision that interferes with its ability to continue to retain counsel for the still-pending accounting litigation. Although the settlement proceeds were paid to WKA, such proceeds were to be held in trust for Debtor by WKA, and were subject to a lien to ensure payment of Debtor's ongoing attorney's fees, a purpose that clearly benefits Debtor. Obviously, Debtor has an ownership interest in such funds and in how they are disbursed, and in obtaining a determination that Creditor's remedy as a judgment creditor lies against Accounting Firm, rather than against Debtor's trust account funds. Debtor is clearly the party aggrieved by the trial court's order, and is a proper party to this appeal, because of the order's potential effect on WKA's incentive to continue to represent Debtor against ICW. Thus, there is no valid basis for dismissing the appeal. (§ 902; see, e.g., *Roa v. Lodi Medical Group, Inc., supra,* 37 Cal.3d at p. 925, fn. 4.)

2. *Standard of Review*

■ Generally speaking, a trial court's approval of a settlement subject to certain conditions related to a judgment lien is reviewed under an abuse of discretion standard. Section 708.440, subdivision (a), provides that any party may seek a court order authorizing a compromise, settlement, dismissal or satisfaction of the pending action in lieu of the written consent thereto of the judgment creditor. In other words, the trial court *may* order an action

subject to a judgment creditor's lien compromised on such terms as it thinks are necessary. (See, e.g., Ahart, Cal. Practice Guide: Enforcing Judgments and Debts (The Rutter Group 1998) ¶ 6:150; *Muller v. Reagh* (1959) 173 Cal.App.2d 1, 5-6 [343 P.2d 135].) However, its power to impose terms is limited by the fact that it is an abuse of discretion for a trial court to make an order that deprives any party of the legal rights to which it is entitled in terms of the priority of its lien, in the absence of appropriate equitable considerations.[4]

·However, when a party to litigation has been served statutory notice, pursuant to section 708.410, subdivision (b), of a judgment creditor's lien, and then nonetheless transfers property to or on behalf of the judgment debtor without the creditor's consent, any orders designed to remedy such a transfer are reviewed under a de novo standard, with an eye to whether such orders comply with the applicable statute. Section 708.470, subdivision (c), provides "If the court determines that a party (other than the judgment debtor) having notice of the lien created under this article has transferred property that was subject to the lien or has paid an amount to the judgment debtor that was subject to the lien, the court *shall* render judgment against the party in an amount equal to the lesser of the following: [¶] (1) The value of the judgment debtor's interest in the property or the amount paid the judgment debtor. [¶] (2) The amount of the judgment creditor's lien created under this article." (Italics added.) Thus, the question on appeal is whether or not, as a matter of law, the trial court complied with the applicable statutory law.

### 3. *WKA's Contractual Lien for Attorney's Fees Is Entitled to Priority*

 The general rule, all things being equal, is that liens have priority among themselves according to the date of their creation, except in cases of

---

[4]See, for example, *Epstein v. Abrams* (1997) 57 Cal.App.4th 1159 [67 Cal.Rptr.2d 555] (*Epstein*) (order approving settlement whereby clients effectively appropriated all of the benefits of judgment, by agreeing to entry of satisfaction of judgment as part of compromise of other claims between parties, constituted abuse of discretion; clients should not have been allowed to appropriate all of the benefits of judgment while at the same time refusing to pay attorney through whose efforts judgment was obtained); *Brienza v. Tepper* (1995) 35 Cal.App.4th 1839 [42 Cal.Rptr.2d 690] (trial court did not abuse its discretion by according judgment creditor's attorney's contractual lien for fees and costs priority over judgment debtor's equitable right of offset, which arose when judgment debtor purchased separate judgment against judgment creditor; while judgment debtor was within his right in seeking and obtaining other judgment to use as offset, it could not be accorded same weight in equity as true equitable offset between parties when judgment is obtained by filing suit, expending time, and incurring fees and costs); and *Nicoletti v. Lizzoli* (1981) 124 Cal.App.3d 361 [177 Cal.Rptr. 685] (*Nicoletti*) (trial court did not abuse its discretion in subordinating statutory lien of judgment creditor to consensual liens of doctors and other medical lienors).

bottomry and respondentia. (Civ. Code, § 2897; *Cetenko, supra,* 30 Cal.3d at p. 531; *Bluxome Street Associates v. Fireman's Fund Ins. Co.* (1988) 206 Cal.App.3d 1149, 1157-1158 [254 Cal.Rptr. 198] (*Bluxome*).) However, this rule only applies when "all other things are equal." (Civ. Code, § 2897.) Under certain circumstances, priority may *not* be based upon which lien was *created* first, but may depend upon which lienholder first gave notice to the person in possession of property subject to competing lien claims. Thus, in *Smitton v. McCullough* (1920) 182 Cal. 530 [189 P. 686] (*Smitton*), an equitable lien created by operation of law was held to have priority over a previously created lien of the same kind, simply because the holder of the later lien was the first to give notice of his lien to the person in possession of the property subject to both liens.[5]

While the priority of certain kinds of *statutory* liens, for example, judgment liens, is dependent on the timing of the giving of proper notice (see

---

[5]*Smitton's* discussion about the importance of giving notice of a lien on funds in the hands of another, even if such funds are not yet in existence, is particularly germane here. "The fact that plaintiff's lien is prior in point of time is not, under the circumstances of this case, decisive of the question of priority. True, where *successive conflicting interests,* purely equitable in nature, are in all other respects equal, the equity prior in time prevails. (Civ. Code, sec. 2897.) The time of creation, however, is the last element for consideration when determining the priority of equitable claims, and plaintiff's claim can predominate by reason of antedating intervener's equity only if the two interests are in all other respects equal.

"Interests are equal in equity when each is entitled to the same recognition and protection by reason of possessing to an equal degree those elements of right and justice which are recognized and aided by courts of equity. Since equity regards substance rather than form, if equitable interests in a subject matter have been created, no inequality will arise based upon their form or mode of creation, and therefore in the present case, if, as the trial court found, plaintiff has an equitable lien upon the subject-matter thereof, the mere fact that it was created by a parol agreement will not render it inferior to an interest created in favor of the intervener by an assignment in writing. Nor does the fact that the intervener acquired a subsequent interest without notice of the plaintiff's prior claim in and of itself give the intervener any right to preference. [Citation.] Where, however, a person entitled thereto assigns a fund in the hands of a third person, the rule is established in this state that notice to the holder of the fund is necessary to render the assignment valid and effectual as against subsequent assignees without notice and for a valuable consideration. [Citations.] Such notice may be either written or oral. [Citation.]

"Of course, there must be a specific fund, actually existing or to come into existence in the future, upon which the assignment may operate, but 'the fund need not be actually in being if it exists potentially— . . . if it will in due course of things arise from a contract or arrangement already made or entered into' when the assignment is made. [Citation.]" (*Smitton, supra,* 182 Cal. 534-535, italics omitted; see also *Nicoletti, supra,* 124 Cal.App.3d at p. 369, *Del Conte Masonry Co. v. Lewis* (1971) 16 Cal.App.3d 678, 681 [94 Cal.Rptr. 439] (*Del Conte*) ["Priority based upon time of creation may . . . be subordinated to the equitable preference accorded to the party who is first to assert his claim. [Citation.] Under this reasoning respondent, as first to assert a claim, by [his] notice of motion under section 688.1 [(now section 708.410 et seq.)] was properly given first priority."].)

*Bluxome, supra,* 206 Cal.App.3d at p. 1158), *no* notice is required before a *contractual* lien for attorney's fees is valid and protected against a levy by a judgment creditor. (*Cetenko, supra,* 30 Cal.3d at p. 533.) ■ Here, in fact, the parties all concede that WKA's contractual lien for fees in the accounting litigation has priority in time over Creditor's judgment creditor lien, because a contractual lien for attorney's fees, entered into before the client has succeeded in recovering any proceeds by way of litigation, is "first in time" as to such potential proceeds. The liens of other creditors, such as attachment liens and judgment liens, reach only the debtor's interest in property, and are subject to prior equities against the debtor. (30 Cal.3d at pp. 534-535 & fn. 9.) ■ This rule, as it applies to judgment creditors, is reflected in section 708.410, subdivision (a), which provides that a judgment creditor may only obtain a lien against a "judgment debtor who is a party to a *pending* action or special proceeding." (§ 708.410, subd. (a), italics added.) ■ Until WKA filed the accounting litigation, there was no pending action, and thus there was nothing upon which Creditor could place a lien. (See *Epstein, supra,* 57 Cal.App.4th at p. 1168.) Thus, WKA's contractual lien over any proceeds from the litigation to be filed was first in time as to such proceeds.

■ Of course, if an attorney does not enter into an agreement for a contractual lien upon any litigation proceeds until *after* the action has been filed, and *after* a judgment creditor has given notice pursuant to sections 708.410 and 708.420, the judgment creditor's lien will have priority. (*Del Conte, supra,* 16 Cal.App.3d at p. 681.)[6] Moreover, an attorney's contractual lien for fees cannot displace a creditor's *recorded* security interest in real property that is the subject of litigation. (*Atascadero Factory Outlets, Inc.* v.

---

[6]Thus, for example, in *Fleet Credit Corp. v. TML Bus Sales, Inc.* (1995) 65 F.3d 119, 123 (*Fleet Credit*) the judgment creditor's judgment lien was given priority over a lien for attorney's fees, because the attorney's fees lien was not created until *after* notice of the judgment lien was given in the action in which the attorney's services were rendered. In *Fleet Credit,* a judgment creditor filed a notice of lien in a federal action brought by a credit corporation, and claimed a right to all amounts remaining after the credit corporation satisfied its state court judgment against the debtor. The credit corporation subsequently moved for attorney's fees as a priority ahead of the judgment creditor's lien. Although the district court concluded that the judgment creditor could not secure its lien at all, and awarded the credit corporation its attorney's fees, the Ninth Circuit Court of Appeals reversed, holding that the judgment creditor did have a lien with priority behind the credit corporation's state court judgment, but ahead of its lien for attorney's fees, because the judgment creditor had filed a notice of lien in the federal action three months *before* the credit corporation requested amendment of a court order to provide for payment of its attorney's fees.

*Augustini & Wheeler* (2000) 83 Cal.App.4th 717 [99 Cal.Rptr.2d 911] (*Atascadero*).[7] However, when the provider of a service, such as a doctor or lawyer, has entered into a contract for a lien on any recovery his or her efforts may secure, then equity and public policy requires such lien to have priority (See, e.g., *Cetenko, supra,* 30 Cal.3d at p. 535-536; *Nicoletti, supra,* 124 Cal.App.3d at p. 368.)

Thus, for example, in *Nicoletti, supra,* 124 Cal.App.3d 361, a judgment creditor appealed from an order subordinating his statutory lien to the consensual liens of doctors and other medical lienors on the settlement proceeds from a personal injury action. The appellate court held that the trial court had not abused its discretion, noting that the medical lienors "are medical people required to provide services to people in emergency situations. They are not judgment creditors. [¶] To force a medical person to perfect a lien every time a service is provided is not logical nor reasonable. Such a requirement would not only damage the physician-patient relationship but would create a tremendous burden upon an already burdened judicial system. [¶] In personal injury matters the ability of litigants to pay the doctors before the services are performed is not always present. If the doctors were then obligated to file a court action to protect their liens after the services were performed it would not be long before doctors would cease to perform their services until they were paid. [¶] Such a practice would truly culminate in an unfortunate result. And public policy should support a system which enables medical people and medical businesses to be secure in a belief they will be paid for their services without having to become involved in civil litigation. [¶] To place any responsibility upon respondent and the other medical lienors to do more than perform their much needed services should not be encouraged nor allowed." (*Id.* at pp. 369-370.)

---

[7]In *Atascadero, supra,* 83 Cal.App.4th 717, a real estate law firm represented a vendor in proceedings to obtain payment from a purchaser under a note. The vendor's law firm had an agreement with the vendor for an attorney's fees lien over any moneys obtained. A dispute arose between the vendor's law firm and the vendor's secured creditors as to the relative priorities of the attorney's fees lien and the claims of the secured creditors. The appellate court held that because the secured creditors had perfected their security interests two years before the vendor gave the vendor's law firm a lien on the note proceeds, the law firm knew or should have known (because the security interests were recorded) that the attorney's fees lien was third in terms of time. (*Id.* at p. 721.)

Furthermore, no equitable considerations, such as the doctrine of unjust enrichment, applied to change this result. The secured creditors had not asked the vendor's law firm (or the vendor) to prosecute the action, nor had they offered to pay any litigation costs, and their mere acquiescence to the collection action did not render them liable for the vendor's litigation expenses. (*Atascadero, supra,* 83 Cal.App.4th at pp. 721-722.) Nor could the vendor's law firm argue that the firm provided services essential to create or preserve the collateral, because the note was secured by a deed of trust that encumbered the real property. (*Id.* at p. 722.)

Accordingly, the *Nicoletti* court concluded that the trial court had not abused its power by (1) reviewing the conflicting claims, (2) ruling on their reasonableness and genuineness, and (3) establishing an equitable distribution based on the public policy of encouraging doctors to provide medical services to injured persons who were not immediately able to pay for them. (*Nicoletti, supra*, 124 Cal.App.3d at p. 370.)

 Here, just as in *Nicoletti*, public policy and equitable considerations favor giving WKA's contractual lien priority over Creditor's judgment lien. No facts support a contrary result; Creditor did not file notice of its lien before Debtor and WKA entered into their fee agreement, as in *Del Conte* and *Fleet Credit*. Creditor has no secured interest as in *Atascadero*.

Creditor does attempt to raise a public policy argument by asserting that there should be a lien priority in favor of its judgment, which represents money owed by Debtor to Debtor's employees for unpaid benefits. Creditor urges that such already-earned-and-still-owing compensation should be entitled to priority over WKA's contractual lien at least to the extent that such contractual lien applies to *all* moneys recovered by WKA as Debtor's attorney, not just to that portion of such recovery that WKA has actually earned.

In support of this public policy argument, Creditor cites various code sections that entitle employees to liens and to priorities in certain circumstances, none of which are directly applicable here. Creditor cites section 1204, subdivision (a)(1), which gives priority to wage claims in assignments for creditors, and Civil Code section 3082 et seq., which gives priority, via the mechanic's lien laws, to persons who provided labor, services, material or equipment that improved real property. If anything, Creditor's examples militate in favor of giving priority to WKA.

The statutory liens and priorities given as examples by Creditor all relate to *specific potential sources of funds* to pay such claims—sources with which the claimants have some direct connection in the sense that *their efforts helped created the fund.* For example, unpaid wages of employees earned within 90 days before the sale or transfer of a business are entitled to be treated as preferred claims and liens *on the proceeds from such sale or transfer*, and must be paid first from such proceeds. (§ 1205.) The proceeds from the sale or transfer of a business are a fund that the unpaid employees helped to create; the business's total value upon sale or transfer reflects value added by its employees' uncompensated labor. So, too, unpaid wages

and bills for goods and services used to improve real property may be perfected as mechanics' liens *on the real property so improved.* (Civ. Code, § 3109 et seq.) The real property's value is a fund that the mechanic's lien claimants helped create; the improved property's total value reflects value added by the claimants' labor, goods and services.

Thus, these statutes simply reflect the equitable principle that those whose labor, skills and materials resulted in the creation of a fund should be entitled to priority in the payment of their claims from such source. This principle can be applied to the holding in *Nicoletti,* too, in which the medical lienors' labor, skills and materials were inextricably tied to the creation of the personal injury settlement proceeds; the final value of that settlement reflected the value added by the medical providers' labor, goods and services.

When the same logic is applied to the facts before us, it is apparent that WKA is entitled to retain the priority of its contractual lien. It was *WKA's* labor, skill and materials (and willingness to take the risk that there would be no recovery at all) that resulted in the settlement proceeds paid by Accounting Firm to Debtor. In contrast, and unlike the situation in *Nicoletti,* or the unpaid employee scenario under section 1205, or the unpaid improvers of real property scenario under Civil Code section 3109 et seq., there is no evidence that Debtor's uncompensated employees (on whose behalf Creditor obtained its judgment lien) helped to create the Accounting Firm/Debtor settlement fund at issue here. Debtor's failure to pay such employees their earned benefits may have increased Debtor's *prelitigation assets,* but Debtor's prelitigation assets are *not* the source of this settlement fund. The fund here represents the compensation allegedly owed by Accounting Firm to Debtor because of Accounting Firm's tortious conduct, and it was created through the labor of WKA, not the uncompensated labor of Debtor's employees.

Creditor also urges that WKA should not be allowed to assert a lien over the settlement proceeds for fees not yet earned. It cites no authority for this proposition, however. In fact, common sense, and *Cetenko, supra,* 30 Cal.3d 528, compel the opposite conclusion.

The point of *Cetenko* was that public policy requires that attorneys, just like the medical providers in *Nicoletti,* be assured that they will be repaid for their labor, so as to encourage them to provide labor to persons not then able to pay for it. Unlike the provision of medical services and care, legal

representation in litigation is not a matter primarily determined by the person who has agreed to provide the service in the hope of later compensation. Instead, litigation is an adversarial process, in which one's adversaries often dictate or influence its course. Such adversaries may utilize various tactics in an attempt to win, including extensive discovery and pre- and post-trial motions. Even if one is successful at trial, additional legal work may be required to protect the judgment on appeal. Thus, attorneys cannot always predict how much work will be required when they enter into prelitigation fee agreements, nor when the need for such work will end.

Therefore, to meet the public policy behind *Cetenko,* it is obvious that an attorney's contractual lien over the proceeds of litigation must have priority until the litigation is finally resolved, and *all* related fees have been billed and paid. Few attorneys would take the risk of a contingent fee if they could not be assured that their attorney's fee liens were applicable to all potential proceeds they might recover until such time as they have been paid in full for their services.

What happened in this case is what commonly happens in multiple-party litigation: Debtor, WKA's client, managed to settle its claim against one party, and such settlement proceeds then became available to fund Debtor's ongoing litigation against the nonsettling party. As is clear from the record here, Debtor is still involved in the *same* litigation that resulted in the creation of the settlement fund, and WKA is still representing Debtor against ICW. Until that litigation is finally resolved, and WKA's related fees and costs have been billed and paid for, any proceeds from such litigation must remain subject to WKA's contractual lien.

Therefore, based on analogous examples and equitable considerations, we conclude no public policy arguments favor Creditor or Debtor's employees over WKA, and, in fact, according to *Cetenko*, public policy favors upholding the priority of WKA's attorney's fee lien. Therefore, WKA's contractual lien for attorney's fees is entitled to priority as to the settlement fund created by WKA's legal work, and such priority remains applicable until the accounting litigation is finally resolved and all WKA's appropriate fees and costs have been billed and paid.

4. *The Trial Court Lacked Jurisdiction to Apply a Remedy Other Than That Allowed by Statute*

Debtor contends that, in addition to reversing the trial court's order, we should direct the trial court to confine its resolution of this issue to the

specific remedies allowed by the applicable code sections. Debtor cites a number of cases in support of this proposition, including *Epstein, supra,* 57 Cal.App.4th 1159. This contention is meritorious.

The trial court's challenged order purported to approve the settlement of the accounting litigation (and the realignment of lien priorities), pursuant to the judgment lien statutes, section 708.410 et seq. However, these statutory provisions relate only to liens of judgment creditors, and do not apply to contractually created attorneys' fees liens. As the California Supreme Court noted, "the purpose of the section [former § 688.1, the predecessor statute to §§ 708.410 et seq.] is unrelated to liens created by contract." (*Cetenko, supra,* 30 Cal.3d at p. 533; *Epstein, supra,* 57 Cal.App.4th at pp. 1166-1167.)

These judgment lien statutes are subject to strict construction because they are purely the creation of the Legislature. (*Epstein, supra,* 57 Cal.App.4th at p. 1167; see *Vershbow v. Reiner* (1991) 231 Cal.App.3d 879, 882 [282 Cal.Rptr. 684] (*Vershbow*) [same rule as to attachment law statutes].) Thus, where a statute requires a court to exercise its jurisdiction in a particular manner, follow a particular procedure, or be subject to certain limitations, an act beyond those limits is in excess of its jurisdiction and void. (*Epstein, supra,* 57 Cal.App.4th at p. 1167; *Jordan-Lyon Productions, Ltd. v. Cineplex Odeon Corp.* (1994) 29 Cal.App.4th 1459, 1466 [35 Cal.Rptr.2d 200] [same rule as to attachment law statutes]; *Vershbow, supra,* 231 Cal.App.3d at p. 883 [same rule as to attachment law statutes].)

Here, when Accounting Firm and Creditor applied for an order that the settlement proceeds must be applied to satisfy the judgment lien, section 708.470, subdivision (a), provided that "the court *may* [in other words, *has the discretion to*] order that the judgment debtor's rights to money or property under the judgment be applied to the satisfaction of the lien created under this article as ordered by the court." (Italics added.) However, that discretion did not allow the trial court to ignore established law relating to the priority of the competing liens, nor did any other relevant section give the trial court that power.

The trial court *did* have the discretion to refuse to vacate the settlement agreement as void even though Creditor had not received notice of, and had not consented to, such settlement. This is because section 708.440, subdivision (a), specifically provides that *either* the Creditor's written consent *or* authorization by order of the court can validate such a settlement. However, the trial court did *not* have the power to remedy the parties' failure to give

notice to, and obtain the consent of, the Creditor by ordering the settlement proceeds held by WKA to be applied to the judgment lien. Such a remedy is not mentioned in the statutory scheme. What *is* specifically allowed, in fact, what is specifically *mandated*, is that "If the court determines that a party (other than the judgment debtor) having notice of the lien created under this article has transferred property that was subject to the lien or has paid an amount to the judgment debtor that was subject to the lien, the court *shall render judgment against the party* in an amount equal to the lesser of the following: [¶] (1) The value of the judgment debtor's interest in the property or the amount paid the judgment debtor. [¶] (2) The amount of the judgment creditor's lien created under this article." (§ 708.470, subd. (c), italics added.)

Here, application of this statutorily mandated remedy requires the trial court to enter judgment against Accounting Firm, since it was Accounting Firm that had notice of Creditor's judgment lien and yet transferred the settlement proceeds that were subject to such lien to Debtor without obtaining either Creditor's written consent or a court order authorizing such settlement. The fact that WKA also had notice of the judgment lien is irrelevant—the entity that had control over the funds, and that transferred them to Debtor without regard to the consent requirement, was Accounting Firm, not WKA, and the statute only authorizes a judgment against the party that, despite notice of a judgment creditor's lien, actually transfers funds to the judgment debtor. Despite Accounting Firm's finger-pointing at WKA, it cites no authority for the proposition that WKA owed Accounting Firm any duty to warn it about the notice of lien already served on Accounting Firm. In fact, all authority is to the contrary: general principles of liability require that Accounting Firm, or more accurately, Accounting Firm's law firm, be held responsible for its own negligence. (Civ. Code, § 1714.)

We summarily reject the contention advanced by Accounting Firm that the statutorily mandated remedy of section 708.470, subdivision (c), should not be applied because it allegedly will result in unjust enrichment. Such remedy is *mandated* by the statute, and we are not free to ignore that mandate. In any event, Accounting Firm's problem was one of its own making.

## DISPOSITION

The order entered July 18, 2000 is reversed. Upon remand, the trial court is directed to take such further action as is appropriate and consistent with the views expressed in this opinion. Pangborn Plumbing Corporation and

R. Pangborn are awarded their costs on appeal against American Benefit Plan Administrators and Carruthers & Skiffington, Robert Carruthers and Gary Carruthers.

Klein, P. J., and Kitching, J., concurred.