Filed 10/28/24  Green v. Douglas Emmett Management CA2/5

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| PAULA GREEN,<br><br>    Plaintiff,<br><br>    v.<br><br>DOUGLAS EMMETT MANAGEMENT, LLC, et al.<br><br>    Defendants;<br><br>MATTHEW GREEN et al.,<br><br>    Objectors and Appellants. | B330681<br><br>(Los Angeles County Super. Ct. No. 20STCV31115) |

APPEALS from orders of the Superior Court of Los Angeles County, Timothy Patrick Dillon, Judge.  Reversed.

Michelman & Robinson and Jon-Jamison Hill for Objector and Appellant Matthew Green.

Robert Green, in pro. per., Objector and Appellant.

Caldwell Law Firm and Larry Caldwell for Plaintiff.

Dinsmore & Shohl, Jeffrey R. Witham and Gina Kripotos for Defendants.

_____

Matthew Green (Matthew) and Robert Green (Robert) obtained a judgment against their sister Paula Green (Paula) in a prior case. They filed notices of judgment liens in this case, which started when Paula filed a civil complaint against two entities that were her landlord: Douglas Emmett Management, LLC (Douglas Emmett) and Barrington Pacific, LLC (Barrington Pacific) (collectively, Landlord). When Paula and Landlord agreed to settle the case, counsel for Landlord sent Paula's attorney a check that the attorney agreed in writing not to redeem until the trial court approved the settlement. Instead of waiting as agreed, however, Paula's attorney deposited the check and refused to return the money. We consider whether Landlord is liable to Matthew and Robert under a judgement enforcement statute, Code of Civil Procedure section 708.470, for transferring money to Paula that Matthew and Robert contend is subject to their judgment liens.[1]

---

[1] Undesignated statutory references that follow are to the Code of Civil Procedure.

## I.  BACKGROUND

### A.  *Prior Litigation*

Paula, Matthew, and Robert are the adult children of Dorothy Green (Dorothy) and Irwin Green (Irwin), who established the Irwin L. Green and Dorothy L. Green Revocable 1998 Trust (the Trust).  Probate litigation ensued after Irwin's death, and the probate court eventually removed Dorothy as trustee of the Trust and ordered Dorothy and Paula to return Trust assets with interest.  The trial court also ordered Paula to return money obtained by undue influence and to pay damages.  Appeals followed, and the eventual result was a probate court judgment requiring Dorothy "and/or" Paula to pay the trustee over $2.9 million, Paula to pay the trustee over $450,000, and Dorothy and Paula to pay Matthew and Robert over $1.4 million in attorney fees and expenses.

### B.  *Paula's Lawsuit Against, and Purported Settlement with, the Landlord*

Paula commenced this action in August 2020.  Her complaint against Landlord asserted causes of action for breach of contract, premises liability, negligence, and intentional torts based on an alleged bedbug infestation and water leak in the apartment where she was living.

Matthew and Robert filed notices of lien in this litigation in March 2021.[2]  They made use of the Judicial Council's form Notice of Lien (AT-180, EJ-185) and attached the aforementioned

---

[2]     Robert filed an amended notice of lien in May 2022.  The amended notice appears to be identical to the original notice.

3

judgment from the prior litigation.[3] There are no signed proofs of service in the appellate record, but it is undisputed Landlord and Paula had notice of the judgment liens.

Paula and Landlord participated in a mediation in August 2022 and agreed to settle the lawsuit. The parties executed a settlement agreement in which Paula agreed to release her claims against Landlord in exchange for $275,000.

On September 1, 2022, Landlord's attorney sent Paula's attorney, Larry Caldwell (Caldwell), an email stating the settlement check would be delivered to his office via Federal Express later that day. Landlord's attorney's email confirmed an earlier telephone discussion to the effect that, "in light of the liens filed by Matthew and Robert . . . , [Paula] w[ould] file a motion for Court approval of the settlement" and "[p]ending instructions from the Court," Caldwell would "not cash or deposit the check . . . ." Caldwell agreed to these conditions in a reply email.

---

[3] The Judicial Council form states, among other things, that "[n]o compromise, dismissal, settlement, or satisfaction of this action or proceeding or any of the rights of the [debtor] to money or property under any judgment procured in this action or proceeding may be entered into by or on behalf of that person, and that person may not enforce any rights to money or property under any judgment procured in this action or proceeding by a writ or otherwise, unless one of the following requirements is satisfied: [¶] a. the prior approval by order of the court in this action or proceeding has been obtained; [¶] b. the written consent of the [creditor] has been obtained or that person has released the lien; or [¶] c. the money judgment of the [creditor] has been satisfied."

4

Paula filed a motion to approve the settlement about a week later. Paula sought approval of the agreement and distribution of $274,000 to Caldwell "as payment of attorneys' fees owed . . . on this case and other cases brought against her by the Green brothers, and secured by written attorneys' liens in favor of [Caldwell's law firm]."[4]

Matthew opposed Paula's motion to approve the settlement and argued, among other things, that a separate action was needed to establish the validity and priority of Caldwell's attorney liens. Paula responded by withdrawing her motion. In her notice of withdrawal of the motion, Paula suggested Matthew's arguments regarding the trial court's jurisdiction to make findings regarding the validity and priority of Caldwell's attorney liens "w[ould] likely require a [m]otion seeking different relief, accompanied by, potentially, a much different [m]emorandum of [p]oints and [a]uthorities in support."

A few days later, Paula filed a trial setting conference report in which she stated she "ha[d] decided not to proceed with the proposed settlement agreement." Paula "now kn[e]w" she and Landlord "did not have th[e] legal capacity or right to enter into a binding settlement agreement" without court approval. Paula indicated that "[i]nstead of proceeding with the proposed settlement agreement, and seeking approval of it, [she] plan[ned] to file a [m]otion for permission to dismiss this action . . . without a settlement."

Following Paula's apparent disavowal of the settlement, Landlord filed an ex parte application for an order directing

---

[4]     The remaining $1,000 was to cover court fees that had been waived.

5

Paula and Caldwell to return the $275,000. Landlord explained that, rather than waiting for court approval as agreed, Caldwell cashed the settlement check on September 12, 2022.[5] Paula opposed the ex parte application and argued, among other things, that the check amounted to a "voluntary payment" because she and Landlord lacked capacity to enter into a binding settlement agreement. She further argued that neither Caldwell nor Landlord's attorney was authorized to enter into a "professional courtesy/'gentlemen's agreement'" to postpone depositing the check. The trial court denied the ex parte application without prejudice to Landlord filing a noticed motion.

### C. Motions Regarding the Status of the Litigation and the Settlement Funds

In December 2022, Matthew, Robert, Landlord, and Paula filed motions regarding the status of the litigation and the settlement funds. Although this appeal concerns only the trial court's denial of Matthew and Robert's motions, the other motions provide context for the trial court's ruling.

Paula filed a motion for leave to dismiss the action "in its entirety with prejudice pursuant to the terms of [the]

---

[5] Also on September 12, 2022, the trial court moved the hearing on the motion to approve the settlement from November 2, 2022, to October 11, 2022. Inexplicably, Caldwell sent Landlord's attorney an email claiming that, "[a]t the hearing today, the court approved the amount of the settlement and vacated the trial date. The only remaining issue to be resolved is how the $275,000 is to be divided as between Paula/[Caldwell] and the Green Brothers. The hearing on that issue is set for October 11, 2022 ......."

[s]ettlement [a]greement." Notwithstanding her statements in the trial setting conference report and arguments in opposition to Landlord's ex parte application, Paula contended the settlement agreement was effective and no court approval was required because Matthew and Robert's judgment liens were invalid.

Landlord filed a motion for an order directing Paula and Caldwell "to return to [the Landlord]'s counsel a settlement payment in the amount of $275,000 conditionally delivered to [Caldwell]."

Matthew and Robert filed motions for entry of judgment against the Landlord pursuant to section 708.470, subdivision (c), which gives judgment creditors a remedy against a party that pays money or transfers property that is subject to a judgment lien to a judgment debtor.[6]

The trial court ruled on the various motions in March 2023. The court denied Paula's motion to dismiss the action pursuant to the settlement agreement because, among other things, it determined Matthew and Robert's judgment liens are valid and enforceable and, as a result, any settlement would ultimately require the court's approval. The trial court further held that, "[a]s everyone, including [Paula] and Caldwell[ ] recognize[d],"

---

[6] The statute provides: "If the court determines that a party (other than the judgment debtor) having notice of the lien created under this article has transferred property that was subject to the lien or has paid an amount to the judgment debtor that was subject to the lien, the court shall render judgment against the party in an amount equal to the lesser of the following: [¶] (1) The value of the judgment debtor's interest in the property or the amount paid the judgment debtor. [¶] (2) The amount of the judgment creditor's lien created under this article."

Caldwell would need to file a separate action to establish any attorney lien.

The trial court denied Matthew and Robert's motions for judgment against Landlord based on the court's determination that the Landlord did not pay money or transfer property to Paula within the meaning of section 708.470, subdivision (c). The trial court determined "[t]he transmission of the funds was conditional" based on Paula's agreement to "hold the funds in . . . trust until court approval after a noticed motion." Landlord, in the court's view, "acted reasonably" and "could not have anticipated that [Paula] would deposit the settlement check notwithstanding the agreement confirmed in writing between counsel and the lack of the statutorily-required court approval."

The trial court granted Landlord's motion "insofar as it [sought] the return of the $275,000 settlement payment." The trial court found it "difficult to understand [Paula's] flip-flopping positions" as to the status of the settlement agreement but determined she had "short-circuited the lawful process of seeking court approval of the settlement and then, if necessary, Caldwell filing a separate action" concerning his attorney lien. There was "no doubt that Caldwell was acting as [Paula's] authorized agent when he cashed the $275,000 check and made unsupportable arguments in [the trial] court."

Paula did not return the $275,000 to Landlord. Instead, she moved to vacate that portion of the trial court's order requiring her to do so. The court granted that motion and vacated its March 2023 order to the extent that it required Paula to return the $275,000 to the Landlord. The court ruled Landlord "may assert causes of action in a cross-complaint and affirmative defenses in an answer" concerning the $275,000.

8

Landlord thereafter filed a cross-complaint alleging causes of action for declaratory relief, conversion, unjust enrichment, violation of Penal Code section 496, fraudulent transfer, constructive fraudulent transfer, and breach of fiduciary duty. Landlord also amended its answer to Paula's complaint to assert affirmative defenses related to her retention of the $275,000.[7]

## II. DISCUSSION

Matthew and Robert challenge the trial court's conclusion that Landlord's delivery of the check to Caldwell was not a payment of money subject to their judgment liens within the meaning of section 708.470, subdivision (c). That challenge is well taken, and we further hold the funds Landlord paid were "subject to" Matthew and Robert's liens. Reversal is accordingly required. Nothing we say in this opinion expresses a view on whether Landlord may maintain an action against Caldwell (or Paula) to recoup the sum it will be required to pay pursuant to this opinion.

---

[7] Landlord moves to augment the record on appeal to include (1) a joint stipulation to permit the filing of the cross-complaint and first amended answer to Paula's complaint, (2) the cross-complaint, and (3) the first amended answer. Paula moves to augment the record on appeal to include (1) her motion to vacate the trial court's order for her to return the $275,000 to Landlord, (2) Landlord's opposition, (3) her reply, and (4) a corrected notice of ruling on the motion. We construe these motions as requests for judicial notice and grant them. (Evid. Code, §§ 452, subd. (d), 459, subd. (a).)

*A. Statutory Framework and Standard of Review*

The Enforcement of Judgments Law (§ 680.010 et seq.) permits a party in whose favor a judgment is entered (a "judgment creditor") to obtain a lien in a pending action involving the party that must pay the judgment (a "judgment debtor"). Section 708.410, subdivision (a) authorizes such a lien, "to the extent required to satisfy the judgment creditor's money judgment, on both of the following: [¶] (1) Any cause of action of such judgment debtor for money or property that is the subject of the action or proceeding. [¶] (2) The rights of such judgment debtor to money or property under any judgment subsequently procured in the action or proceeding."

Once the judgment creditor files and serves notice of the lien, any "compromise, dismissal, settlement, or satisfaction of the pending action" requires either court approval or the judgment creditor's written consent. (§ 708.440, subd. (a).) To obtain court approval of a settlement, the judgment debtor must file a noticed motion. (§ 708.440, subd. (b).) After a hearing, the trial court "may, in its discretion, . . . make an order . . . that may include such terms and conditions as the court deems necessary." (§ 708.440, subd. (b).)

This appeal requires resolution of a separate, narrow issue involving the provision of the Enforcement of Judgments Law that governs circumstances in which a judgment debtor receives money or property subject to the lien without the required approval or consent. As mentioned earlier in the margin, section 708.470, subdivision (c) provides that "[i]f the court determines that a party (other than the judgment debtor) having notice of the lien created under this article has transferred property that was subject to the lien or has paid an amount to the judgment

10

debtor that was subject to the lien, the court shall render judgment against the party in an amount equal to the lesser of the following: [¶] (1) The value of the judgment debtor's interest in the property or the amount paid the judgment debtor.  [¶] (2) The amount of the judgment creditor's lien created under this article."  Relief under section 708.470 does not require a finding of collusion between the payor and the judgment debtor.  (*Gilman v. Dalby* (2021) 61 Cal.App.5th 923, 936.)

If a trial court finds that a party with notice of a lien has made a payment or transfer to the judgment debtor of property subject to the lien, however, the court *shall* enter judgment against them.  (§ 708.470, subd. (c).)  The factual elements of this analysis—i.e., whether the party had notice and whether there was a payment or transfer—are reviewed for substantial evidence.  (*Lynch v. California Coastal Com.* (2017) 3 Cal.5th 470, 476 [holding that factual questions are typically reviewed for substantial evidence].)  Where these factual conditions are satisfied, "the question on appeal is whether or not, as a matter of law, the trial court complied with the applicable statutory law."[8] (*Casa Eva I Homeowners Assn. v. Ani Construction & Tile, Inc.* (2005) 134 Cal.App.4th 771, 778.)

---

[8]  The trial court's approval of a settlement and imposition of terms and conditions under section 708.440 is reviewed for abuse of discretion.  (*Pangborn Plumbing Corp. v. Carruthers & Skiffington* (2002) 97 Cal.App.4th 1039, 1048-1049.)  The parties here mistakenly suggest the same standard applies to the trial court's denial of a motion for judgment under section 708.470, subdivision (c).

11

## B. Section 708.740 Applies to the $275,000 Paid by Landlord to Caldwell

In its construction of section 708.470, subdivision (c)'s limiting language, the trial court erroneously focused on the verbs (i.e., *transfer* and *payment*) rather than their objects (i.e., *property and money subject to the lien*). There is nothing in the language of section 708.470, subdivision (c) to suggest it does not apply to conditional transfers or payments. (See *In re Marriage of Katz* (1991) 234 Cal.App.3d 1711, 1720-1721 [emphasizing that although "[t]ransfer of property is not defined in section 708.470," the word "transfer" has been construed in other contexts to include "the changing of . . . control or possession"].) More practically, attaching conditions to a transfer or payment does not necessarily safeguard the interests of a judgment creditor. If a payor could insulate itself from liability under section 708.470, subdivision (c) merely by attaching conditions to any payment to a judgment debtor, the remedy provided by this statute would be illusory.

Our analysis must therefore turn to whether the money the Landlord paid to Paula "was subject to the lien." (§ 708.470, subd. (c).) We hold it was because we believe "subject to" requires a broad reading in a case of this sort. Specifically, where, as here, there is an executed settlement agreement that calls for payment of a sum in exchange for dismissal of an action, a payment made pursuant to that agreement is "subject to" the lien because the litigation will conclude (with or without formal entry of judgment) upon full performance of the agreement. (See, e.g., *Pangborn*, *supra*, 97 Cal.App.4th at 1057 [party that made a payment to a judgment debtor pursuant to a settlement

12

agreement liable to a judgment creditor under section 708.470, subdivision (c)].)

Paula and Caldwell argue against this result, relying on *Casa Eva* and believing that case and *Pangborn* are irreconcilable. That is incorrect; *Casa Eva* is just inapposite. In *Casa Eva*, a judgment creditor sought to reach funds recovered by its judgment debtor's insurer following a series of settlements. (*Casa Eva*, *supra*, 134 Cal.App.4th at 777-778.) The Court of Appeal held the lack of a judgment precluded relief under section 708.470, subdivisions (a) and (b)—provisions with which we are not concerned. (*Id.* at 781.) With respect to section 708.470, subdivision (c), however, the Court of Appeal did *not* focus on the lack of a judgment. Rather, it emphasized that the judgment debtor had not received any money or property and its insurer's recovery was based on an assignment of rights from another party. (*Id.* at 782-784.)

If Paula and Caldwell were correct that Landlord's payment was not "subject to" a properly noticed lien, the mischief that would work in this case (and potentially many cases where settlements call for a payment of funds in exchange for voluntary dismissal of an action) is obvious. If we were to hold that the $275,000 payment is not governed by section 708.470, subdivision (c) because there has not yet been a judgment in the litigation filed by Paula against Landlord, all that would remain to be done to avoid Matthew and Robert's lien after issuance of our opinion would be for Paula to voluntarily dismiss her lawsuit (or otherwise fail to prosecute it). That would effectively consummate the settlement to which the parties agreed: Paula would have her $275,000 and Landlord would have its dismissal such that there would be little if any incentive to seek to recoup

13

the funds that Caldwell deposited in apparent contravention of his agreement with counsel for Landlord.

Insofar as Caldwell and Landlord contend the $275,000 payment cannot be "subject to" Matthew and Robert's liens because the settlement between Paula and Landlord violated section 708.440, subdivision (a), we believe the contention mixes apples and oranges. We are not concerned in this appeal with passing judgment on whether the settlement agreement complied with that statue and the consequences if it did not. We are concerned only with deciding whether Landlord made a payment that was "subject to" the liens of which it had notice. As we have explained, Landlord did.[9]

---

[9] Paula moves for sanctions against Robert, Matthew, and Matthew's attorney for taking a frivolous appeal. (Cal. Rules of Court, rule 8.276(a)(1).) Naturally, that motion is denied.

DISPOSITION

The trial court's orders denying Matthew and Robert's motions for entry of judgment against Douglas Emmett and Barrington Pacific are reversed and the cause is remanded for entry of judgment against Douglas Emmett and Barrington Pacific pursuant to section 708.470, subdivision (c).  Matthew and Robert are awarded costs on appeal.

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

BAKER, Acting P. J.

We concur:

KIM, J.

DAVIS, J.*

---

* Judge of the Los Angeles County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

15